NOT DESIGNATED FOR PUBLICATION

No. 119,760

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRIAN ANTHONY BRIONES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Opinion filed August 23, 2019. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan* and *Kendall Kaut*, assistant district attorneys, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MALONE, J., and STEVEN E. JOHNSON, District Judge, assigned.

PER CURIAM: In a prior criminal case, the Johnson County District Court ordered Brian Anthony Briones to wear a GPS ankle bracelet as a condition of his felony bond. Without permission, Briones removed that ankle bracelet in Wyandotte County, where it was then recovered. The State charged Briones in Johnson County District Court with unlawfully tampering with electronic monitoring equipment. Under a plea agreement, he pled guilty and was sentenced to 28 months' imprisonment, to be served consecutively to the sentence in the case in which he was ordered to wear the ankle bracelet. Briones appeals, arguing (1) that Johnson County lacked jurisdiction over his prosecution because

1

venue lay only in Wyandotte County and (2) that the district court misunderstood its authority under the relevant sentencing statutes and erroneously believed that it had to run the sentences consecutive when it could have ordered them to run concurrent. We find no error and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The Johnson County District Court placed Briones on house arrest in case 15CR1370. To satisfy the GPS monitoring condition, he had to wear an ankle bracelet, which Johnson County house arrest officers monitored. Although the records from that case are not in the record on appeal, our record is clear that Briones was on felony probation in 15CR1370 when he was ordered to wear the ankle bracelet.

On September 5, 2016, in communication with the Johnson County house arrest office, the Kansas City, Kansas, Police Department responded to a "possible house arrest tamper alert" and found Briones' ankle bracelet in two pieces in Wyandotte County. Briones was not present, but when he turned himself in to the Johnson County house arrest office later that day, he was not wearing his ankle bracelet.

On October 6, 2016, the State charged Briones in Johnson County District Court case 16CR2548 with one count of unlawfully tampering with electronic monitoring equipment in violation of K.S.A. 2018 Supp. 21-6322. Briones later filed a pro se motion to dismiss, arguing that it was undisputed that the alleged offense had occurred in Wyandotte County, rendering Wyandotte County the appropriate venue and leaving the Johnson County District Court without jurisdiction over the prosecution of the offense. Briones' counsel also filed a motion to dismiss based on the same argument. The State responded that venue was proper and the Johnson County District Court had jurisdiction because the ankle bracelet was ordered in a Johnson County case, Briones was in Johnson

2

County when he signed the agreement not to tamper with it, and the ankle bracelet was monitored in Johnson County.

The district court held a hearing on the motion on November 6, 2017, and the parties rested on their written motions. The district court ruled:

> "The primary argument in the Defendant's motion to dismiss is that the actual alleged act, which would be the crime itself of removing electronic monitoring bracelet, presumably occurred in Wyandotte County, and therefore, that would be the proper venue, the only venue for this case to be prosecuted.
>
> "But as pointed out in the State's response, and there are two or more possible places in which a prosecution can occur in different counties when separate acts make up a particular crime; it can be brought in either or multiple counties.
>
> "The crime of unlawful tampering of electronic monitoring device requires both that the device is activated or installed, if you will, because of a Court order for supervising a particular person, in this case Mr. Briones, and the removal or damage of the equipment that's done without authorization is another part.
>
> "The underlying case for which Mr. Briones was on this monitoring equipment was from—as ordered here in Johnson County, and on that basis I will find that Johnson County is an appropriate jurisdiction, appropriate venue for pursuing this charge against Mr. Briones, so the Defendant's motion to dismiss will be denied."

On February 16, 2018, Briones pled guilty to unlawfully tampering with electronic monitoring equipment in exchange for the State dismissing a third pending criminal case against him in 17CR2666. At the plea hearing, Briones also stipulated to violating his probation in 15CR1370, in part by tampering with the electronic monitoring equipment as charged in 16CR2548. The court accepted the stipulation and found that "the probation previously granted in this matter on October 14, 2015, is hereby revoked." The presentence investigation (PSI) report in 16CR2548 showed that Briones previously had been convicted of failure to register in 15CR1370 and that case was a felony.

3

On March 8, 2018, Briones filed a motion to withdraw his plea in 16CR2548, arguing that when he pled guilty, he did not understand the restrictions on his right to appeal. But at a hearing on March 23, 2018, Briones withdrew the motion.

On April 12, 2018, the district court sentenced Briones for unlawful tampering with electronic monitoring equipment, imposing the mitigated presumptive sentence agreed to by the parties of 28 months' imprisonment, to be served consecutively to his sentence in 15CR1370. The district court stated: "This sentence by operation of law being committed while on bond in the earlier case, this sentence will be consecutive to any sentence remaining as previously ordered in the case under [*sic*] 15CR1370." Briones timely appealed the district court's judgment.

Briones filed a brief with this court challenging both his conviction and sentence. Briones first claims that the Johnson County District Court lacked jurisdiction over his prosecution because venue lay only in Wyandotte County. He also claims the district court misunderstood its authority under the relevant sentencing statutes and erroneously believed that it had to run the sentences consecutive when it could have ordered them to run concurrent. The State argues that venue was proper in Johnson County. On the sentencing issue, the State argues that we lack jurisdiction to review Briones' presumptive sentence, but alternatively, the State argues that the district court was required by statute to run the sentences consecutive.

After the briefs were filed, this court issued an order directing the parties to show cause why this court has jurisdiction over Briones' venue argument given his failure to pursue a motion to withdraw his plea in district court. Both parties responded to the show cause order, and this court retained the issue "on present showing, to be addressed by the panel of judges when the case is decided."

4

WAS VENUE PROPER IN JOHNSON COUNTY?

We will first address whether Briones is barred from appealing his conviction. The right to appeal is entirely statutory and is not contained in the United States or Kansas Constitutions. "'Appellate courts have only such jurisdiction as is provided by law.'" *State v. Marinelli*, 307 Kan. 768, 774, 415 P.3d 405 (2018). In Kansas, criminal defendants are granted an appeal as a matter of right from any judgment against them. See K.S.A. 2018 Supp. 22-3602(a). But K.S.A. 2018 Supp. 22-3602(a) broadly prohibits a defendant's appeal of his or her conviction following a guilty plea:

> "No appeal shall be taken by the defendant from a judgment of conviction before a district judge upon a plea of guilty or nolo contendere, except that jurisdictional or other grounds going to the legality of the proceedings may be raised by the defendant as provided in K.S.A. 60-1507, and amendments thereto."

Briones' claim that venue was not proper in Johnson County is a challenge to his conviction. Generally, K.S.A. 2018 Supp. 22-3602(a) would bar Briones from appealing his conviction given his guilty plea. The Kansas Supreme Court has held that to challenge a conviction following a guilty plea, a "defendant must first file a motion to withdraw plea in the district court. If that motion is denied, a direct appeal may follow. The defendant's failure to file a motion to withdraw plea in the district court . . . deprives this court of appellate jurisdiction." *State v. Hall*, 292 Kan. 862, Syl. ¶ 1, 257 P.3d 263 (2011). K.S.A. 2018 Supp. 22-3210(d) allows a defendant to file a motion to withdraw a plea of guilty or nolo contendere at any time before sentencing. Such a motion can be filed after sentencing to correct manifest injustice provided the motion is filed within one year of the sentence becoming final, and even that deadline can be extended upon a showing of excusable neglect by the defendant. K.S.A. 2018 Supp. 22-3210(d)(2), (e).

Briones argues that an exception applies here that allows this court to review his venue claim on appeal because he is challenging the district court's subject matter

jurisdiction to preside over his prosecution and eventually convict and sentence him. But K.S.A. 2018 Supp. 22-3602(a) expressly provides "that jurisdictional or other grounds going to the legality of the proceedings may be raised by the defendant as provided in K.S.A. 60-1507." So Briones has two paths to bring his venue claim before the court. First, he could file a motion to withdraw his guilty plea, and if it was denied, he could appeal that decision to this court. Second, he could file a K.S.A. 60-1507 motion, and any decision in that action would be subject to appellate review.

Another point to consider is that as part of Briones' agreement to plead guilty in 16CR2548, the State dismissed a separate criminal case against him in 17CR2666. Now Briones wants to have this court set aside his conviction in 16CR2548 without the State being able to reinstate the charge or charges in 17CR2666. It only makes sense for the courts to require Briones to move to set aside his guilty plea, thereby nullifying the plea agreement, if he wants to seek relief from his conviction after a guilty plea.

The plain language of K.S.A. 2018 Supp. 22-3602(a) appears to bar Briones' attempt to challenge the district court's venue and overturn his conviction in this direct appeal following his guilty plea. Nevertheless, in this unpublished opinion, we will assume without deciding that we have appellate jurisdiction to address Briones' first issue on appeal. The State also argues that we lack jurisdiction to review Briones' sentence and his second issue on appeal. We will address that argument later in this opinion.

Turning to the merits of the first issue, the Johnson County District Court ordered Briones to wear the GPS monitoring ankle bracelet and he unlawfully removed that bracelet in Wyandotte County. Briones now argues that Kansas' venue statutes allow his prosecution only in Wyandotte County, leaving the Johnson County District Court without subject matter jurisdiction to preside over his prosecution and eventually convict and sentence him. The State disagrees, arguing that because the monitoring was ordered in Johnson County, Johnson County was a permissible venue under the applicable

6

statutes and the Johnson County District Court had subject matter jurisdiction over the prosecution. The State argues in the alternative that K.S.A. 2018 Supp. 22-2619, which concerns venue for crimes committed with electronic devices, operates to provide venue in Johnson County for prosecution of Briones' crime.

Kansas appellate courts have long held that venue implicates subject matter jurisdiction. See *State v. Dunn*, 304 Kan. 773, 816, 375 P.3d 332 (2016). "'Subject matter jurisdiction is the power of the court to hear and decide a particular type of action.' The existence of subject matter jurisdiction cannot be waived, and its nonexistence may be challenged at any time. A conviction obtained in a court without subject matter jurisdiction is void. [Citation omitted.]" 304 Kan. at 784.

Whether subject matter jurisdiction exists is a question of law subject to unlimited review on appeal. *Dunn*, 304 Kan. at 784. Most venue challenges frame venue as "a question of fact to be determined by the jury." See *State v. Hunt*, 285 Kan. 855, 859, 176 P.3d 183 (2008). But when the relevant facts are undisputed, all that remains is to "determine[], as a matter of law from the admitted facts, the proper venue for the trial of the action." See *Addington v. State*, 199 Kan. 554, 557, 431 P.2d 532 (1967). Here, the relevant facts are undisputed, so we consider de novo the legal question of whether venue was proper in Johnson County. And to the extent that the analysis requires interpretation of the venue statutes, our review is also unlimited. See *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019) ("We review issues of statutory interpretation de novo.").

The Kansas statutes governing jurisdiction and venue for criminal prosecutions are found in Article 26 of the Kansas Code of Criminal Procedure. K.S.A. 22-2602 states: "Except as otherwise provided by law, the prosecution shall be in the county where the crime was committed." Under K.S.A. 22-2603, "[w]here two or more acts are requisite to the commission of any crime and such acts occur in different counties the prosecution may be in any county in which any of such acts occur."

7

The State focuses on this court's decision in *State v. Briones*, No. 117,939, 2018 WL 6424298 (Kan. App. 2018) (unpublished opinion), *petition for rev. filed* December 20, 2018, so we will begin by reviewing that case. We will refer to the defendant in that case, Eddy Briones, as Eddy to distinguish him from the appellant here. After Eddy was convicted of theft, the Overland Park Municipal Court in Johnson County, Kansas, ordered him to complete 60 days of house arrest. As part of his house arrest, Eddy was issued a monitoring bracelet and "signed a Johnson County Department of Corrections Electronic Monitoring Contract." 2018 WL 6424298, at *1. The next day, after house arrest staff received an alert that the bracelet had been tampered with, police found the bracelet in Kansas City, Missouri. During his eventual bench trial in Johnson County for unlawfully tampering with electronic monitoring equipment, Eddy argued that because the tampering occurred in Missouri, the Johnson County District Court lacked jurisdiction over his prosecution. The district court disagreed and convicted Eddy of the charge.

On appeal, this court noted that K.S.A. 2017 Supp. 21-5106 established the parameters for jurisdiction under the Kansas Criminal Code. 2018 WL 6424298, at *2. Under that statute:

> "(a) A person is subject to prosecution and punishment under the law of this state if:
> (1) The person commits a crime wholly or partly within this state;
> . . . .
> "(b) A crime is committed partly within this state if:
> (1) An act which is a constituent and material element of the offense;
> (2) an act which is a substantial and integral part of an overall continuing criminal plan; or
> (3) the proximate result of such act, occurs within the state."

This court also noted that it had summarized the elements of unlawfully tampering with electronic monitoring equipment as:

8

"'(1) intentionally removing, disabling, altering, tampering with, damaging, or destroying (2) any electronic monitoring equipment used (3) pursuant to court order or as a condition of parole. Stated differently, the elements are (1) the act of intentionally tampering with electronic monitoring equipment, (2) by someone under a court order or who is on parole, (3) which requires him or her to wear electronic monitoring equipment.'" 2018 WL 6424298, at *2 (quoting *State v. Thacker*, 48 Kan. App. 2d 515, 519-20, 292 P.3d 342 [2013]).

Because it was clear that the crime did not occur wholly within Kansas, the question for this court was whether the crime was committed partly within Kansas, which would establish Kansas jurisdiction under K.S.A. 2017 Supp. 21-5106(b). 2018 WL 6424298, at *3. Even more specifically stated, this court considered whether "the act of supervision and the court order issuing from" Johnson County constituted "a constituent and material element of the offense of tampering with electronic monitoring equipment." 2018 WL 6424298, at *3. This court held:

"[A]t the time the electronic monitoring bracelet was removed, Briones was under court ordered supervision which required him to wear the bracelet. In the language of *Thacker*, the stipulated facts proved the second and third constituent and material elements of the offense: '(2) any electronic monitoring equipment used (3) pursuant to court order . . . .' These two elements both occurred in Johnson County, Kansas, meaning this crime was partially committed within the state under K.S.A. 2017 Supp. 21-5106(b)(1). As a result, the Johnson County District Court did not err in ruling that it had jurisdiction to hear the case and render a verdict." 2018 WL 6424298, at *4.

The *Briones* court also held that the proximate result of the bracelet's removal was that "the Overland Park Municipal Court and Johnson County Community Corrections lost their ability to regulate [Eddy's] activities and insure compliance with the court order issued from a Kansas municipal court." 2018 WL 6424298, at *4. Because this act occurred in Kansas, the court held that Johnson County had jurisdiction under K.S.A. 2017 Supp. 21-5106(b)(3). 2018 WL 6424298, at *4.

9

Returning to our case, the State recites the facts and holdings in *Briones*, then generally argues that this case is indistinguishable, so this court should again find that K.S.A. 2018 Supp. 21-5106(b)(1) and (3) vest the Johnson County District Court with jurisdiction over Briones' prosecution. But as Briones points out in his reply brief, this appeal does not rest on K.S.A. 2018 Supp. 21-5106(b). K.S.A. 2018 Supp. 21-5106(a) establishes the parameters for when "[a] person is subject to prosecution and punishment under the law of this state." Briones does not argue that he is not subject to prosecution and punishment in Kansas; he argues that K.S.A. 22-2602 and 22-2603, which identify the counties within Kansas in which his prosecution shall occur, allow his prosecution only in Wyandotte County. Thus, our court's unpublished decision in *Briones* does not control the outcome of this appeal.

We will now focus on Briones' claim that, under the Kansas venue statutes, the Johnson County District Court was not the proper venue for his prosecution of unlawfully tampering with electronic monitoring equipment. K.S.A. 22-2603 states that where two or more acts are required to commit a crime and the acts occur in different counties, "the prosecution may be in any county in which any such acts occur." So the question becomes whether Briones' crime of unlawfully tampering with electronic monitoring equipment required at least one act that occurred in Johnson County.

K.S.A. 2018 Supp. 21-6322(a) defines unlawfully tampering with electronic monitoring equipment as "knowingly and without authorization, removing, disabling, altering, tampering with, damaging or destroying any electronic monitoring equipment used pursuant to court ordered supervision or as a condition of post-release supervision or parole." Under PIK Crim. 4th 63.131 (2014 Supp.), the elements of the crime are:

> "1. The defendant knowingly and without authorization (removed) (disabled) (altered) (tampered with) (damaged) (destroyed) electronic monitoring equipment.

"2. The electronic monitoring equipment was being used as a condition of (court-ordered supervision) (post-release supervision) (parole).

"3. This act occurred on or about the ___ day of _____, ____, in _____ County, Kansas."

K.S.A. 22-2603 does not include a precise definition of "acts" that trigger venue within a county, other than to explain that they must be "requisite to the commission of any crime." Nor do any Kansas appellate decisions that we can find provide a precise definition of the term "acts" as used in K.S.A. 22-2603. But it seems to us that the commonly recognized "elements" of a crime are synonymous with the "acts" of the crime that trigger venue under K.S.A. 22-2603. If anything, "elements" may be a broader term than "acts" as there may be some crimes that include more than one act within each element. In any event, our Supreme Court has used the elements of a crime to analyze whether there were any "acts" to trigger venue under K.S.A. 22-2603. See, e.g., *State v. Castleberry*, 301 Kan. 170, 176-78, 339 P.3d 795 (2014) (using elements of the crime of unlawful use of a communication facility to decide venue for prosecution of that crime).

The district court found that venue was proper in Johnson County because the electronic monitoring equipment was being used as a condition of court ordered supervision in Johnson County. This is an element of the crime of unlawful tampering with electronic monitoring equipment the State had to prove to find Briones guilty of the charge, and it would constitute at least one act required to commit the crime. Under K.S.A. 22-2603, Johnson County was a proper venue to prosecute Briones because one required act of the crime occurred in Johnson County.

But Briones argues that the court ordered supervision in Johnson County was a "status element" of the crime and, as such, it cannot establish venue. Briones is unclear on what he means by a "status element" of a crime, but the gist of his argument is that the *physical act* of committing a crime must take place within a county for that county to have proper venue to prosecute the crime. But Kansas courts have held that venue for the

11

prosecution of a crime may be proper in a county even though the physical act of committing the crime occurred in a different county. For instance, in *State v. Doolin*, 216 Kan. 291, 532 P.2d 1080 (1975), the appellant, an inmate of the Kansas State Industrial School for Boys in Topeka, was convicted in Shawnee County of aggravated juvenile delinquency because he escaped from the control of school authorities while on a supervised trip to the Osage County State Lake. The *physical act* of escape occurred in Osage County, and the appellant was apprehended in Iowa. But our Supreme Court found that venue was proper in Shawnee County because the appellant had run away from the Topeka facility on a *prior* occasion, and the prior escape was one of the elements of the crime of aggravated juvenile delinquency. 216 Kan. at 291.

In *State v. Jones*, 9 Kan. App. 2d 106, 673 P.2d 455 (1983), the defendant was being held in the Allen County Jail awaiting trial when he became ill and was transported to a Kansas City, Missouri, hospital. When the defendant was released from the hospital, he failed to return to Allen County and was later apprehended in another state. The State charged the defendant with aggravated escape from custody in Allen County District Court, and he contested the venue because he did not commit any act related to his escape in Allen County. On appeal, this court held that even though the *physical act* of escape occurred outside of Allen County, that county was the proper venue to prosecute the escape charge because that is the place where the defendant had to return to face the original charge. 9 Kan. App. 2d at 106-07.

In *State v. Boorigie*, 273 Kan. 18, 41 P.3d 764 (2002), the defendant was charged and convicted in Montgomery County with criminal solicitation of false testimony to avoid other criminal charges pending against him in Montgomery County. Although the defendant's *physical act* of soliciting false testimony occurred outside Montgomery County, our Supreme Court found that Montgomery County was the proper venue for the solicitation charges because the solicitation charges were a "direct outgrowth" of the

original criminal charges in Montgomery County. 273 Kan. at 24. Citing this court's decision in *Jones*, our Supreme Court reasoned:

> "In *Jones* and this case, the subsequent criminal charges were a direct outgrowth of the original charges committed in the county ultimately exercising jurisdiction to try the defendants. In both cases, the offenders had been taken into custody for crimes committed in that county and then transferred out of the county where they committed acts that gave rise to the subsequent charges. And, much as the appellant's escape in *Jones* was aimed at avoiding prosecution in Allen County, Boorigie's efforts to find someone to falsely testify were for the sole purpose of avoiding prosecution in Montgomery County. Comparing these similarities, and considering the direct link between the Montgomery County criminal charges and the crimes committed [elsewhere], it is logical that Montgomery County was a proper venue for the prosecution of the defendant's solicitations for false testimony." 273 Kan. at 24-25.

Here, the charge of unlawfully tampering with electronic monitoring equipment was similarly a "direct outgrowth" of the Johnson County criminal case in which Briones was ordered to wear the electronic monitoring device. Briones' removal of that electronic monitoring device was an attempt to escape being monitored for pending criminal cases in Johnson County. Applying the rationale of *Boorigie*, Johnson County was a proper venue to prosecute Briones even though his physical act of tampering with the equipment occurred in Wyandotte County.

Under K.S.A. 22-2603, when two or more acts are required to commit a crime, the prosecution may be in any county where at least one of the acts occurred. Kansas appellate decisions are clear that a requisite act to trigger venue is not restricted to the physical act of committing the crime. Here, the fact that the electronic monitoring equipment was being used as a condition of court ordered supervision in Johnson County was a requisite act to the commission of the crime for which Briones was convicted. As a result, we conclude that Johnson County was a proper venue to prosecute Briones for

13

unlawfully tampering with electronic monitoring equipment. Based on this conclusion, we need not address the State's alternative argument that K.S.A. 2018 Supp. 22-2619 provides venue to prosecute Briones in Johnson County.

DID THE DISTRICT COURT ERR BY ORDERING CONSECUTIVE SENTENCES?

Briones argues that the district court misunderstood its authority under the relevant sentencing statutes and erroneously believed that it had to run the sentence in 16CR2548 consecutive to the sentence in 15CR1370 when it could have ordered them to run concurrent. The State argues that we lack jurisdiction to review Briones' presumptive sentence, but alternatively, the State argues that the district court was required by statute to run the sentences consecutive.

K.S.A. 2018 Supp. 22-3602(a) bars a direct appeal challenging a conviction following a guilty plea, but it does not similarly bar direct appeals challenging a sentence. See *State v. Key*, 298 Kan. 315, 321, 312 P.3d 355 (2013) ("A guilty or no contest plea surrenders a criminal defendant's right to appeal his or her *conviction* but not his or her *sentence*."). Even so, the State relies on K.S.A. 2018 Supp. 21-6820(c)(1) and asserts that we lack jurisdiction to review Briones' presumptive sentence. K.S.A. 2018 Supp. 21-6820(c)(1) states that on appeal from a judgment or conviction entered for a felony committed on or after July 1, 1993, the appellate court shall not review "[a]ny sentence that is within the presumptive sentence for the crime." The district court sentenced Briones to 28 months' imprisonment, which was a presumptive sentence for his crime of unlawfully tampering with electronic monitoring equipment. Generally, we would lack jurisdiction to review this sentence under K.S.A. 2018 Supp. 21-6820(c)(1).

But Briones argues that "'the district court wrongly interpreted its statutory authority and therefore refused to consider matters before it that were potentially relevant to the sentence.'" Our Supreme Court has held that despite the statutory prohibition on

14

reviewing presumptive sentences, Kansas appellate courts have jurisdiction to consider a claim that a "district court wrongly interpreted its sentencing authority and therefore refused to consider matters before it that were potentially relevant to the sentence." See *State v. Warren*, 297 Kan. 881, 885, 304 P.3d 1288 (2013).

At Briones' sentencing hearing, the district court ordered the sentences in the two cases to run consecutive "by operation of law" because Briones committed the new crime in 16CR2548 while on felony bond in 15CR1370. Briones now argues that the district court misunderstood its authority under the relevant sentencing statutes and erroneously believed that it had to run the sentences consecutive when it could have ordered them to run concurrent. Because Briones is arguing that the district court wrongly interpreted its statutory sentencing authority, we conclude that we have appellate jurisdiction to address his claim on appeal. See *Warren*, 297 Kan. at 885.

Briones did not object in the district court to the consecutive nature of his sentences. Generally, issues not raised before the district court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). But there are several exceptions to this general rule, including when the newly asserted theory involves only a question of law arising on proved or admitted facts and finally determines the case. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). We agree with Briones that this exception applies here, so we will address his claim for the first time on appeal.

Our analysis requires review and interpretation of the Kansas Sentencing Guidelines Act. Interpretation of that statutory scheme is a question of law subject to unlimited review. *State v. Kinder*, 307 Kan. 237, 240, 408 P.3d 114 (2018).

At Briones' sentencing hearing, the parties agreed that he committed his crime in 16CR2548 while he was released on felony bond in 15CR1370. After sentencing Briones to 28 months' imprisonment for unlawfully tampering with electronic monitoring

15

equipment, the district court stated: "This sentence by operation of law being committed while on bond in the earlier case, this sentence will be consecutive to any sentence remaining [in] 15CR1370." Although the district court cited no statutory authority for imposing the mandatory consecutive sentences, it would appear the district court was relying on K.S.A. 2018 Supp. 21-6606(d), which states:

"Any person who is convicted and sentenced for a crime committed while on release for a felony pursuant to article 28 of chapter 22 of the Kansas Statutes Annotated, and amendments thereto, *shall* serve the sentence consecutively to the term or terms under which the person was released." (Emphasis added.)

On appeal, Briones contends that K.S.A. 2018 Supp. 21-6606(d) conflicts with K.S.A. 2018 Supp. 21-6604(f)(4) and, when the two statutes are reconciled, the district court has the discretion to order concurrent or consecutive sentences for an offender who commits a crime while on felony bond. But we need not address that argument because our record reflects that Briones committed his crime in 16CR2548 while he was on felony probation in 15CR1370. The Johnson County District Court placed Briones on house arrest and ordered him to wear an ankle bracelet in 15CR1370. Briones removed the ankle bracelet on September 5, 2016, leading to the charge in 16CR2548. At the plea hearing on February 16, 2018, Briones also stipulated to violating his probation in 15CR1370, in part by tampering with the electronic monitoring equipment as charged in 16CR2548. The district court accepted the stipulation and found that "the probation previously granted in this matter on October 14, 2015, is hereby revoked." The PSI report in 16CR2548 showed that Briones previously had been convicted of failure to register in 15CR1370 and that case was a felony.

At the sentencing hearing on April 12, 2018, the parties and the district court all agreed that Briones committed his crime in 16CR2548 while he was on felony bond in 15CR1370. Perhaps Briones had been released on bond on a probation violation warrant in 15CR1370 when he committed his new crime in 16CR2548, but we do not know that

16

for sure because the records from 15CR1370 are not included in our record on appeal. But our record *does* show that Briones was on felony probation in 15CR1370 when he committed his new crime in 16CR2548. Because Briones committed his new crime in 16CR2548 while he was on felony probation in 15CR1370, the court needed to order consecutive sentences under K.S.A. 2018 Supp. 21-6606(c), which states:

> "Any person who is convicted and sentenced for a crime committed while on probation, assigned to a community correctional services program, on parole, on conditional release or on postrelease supervision for a felony *shall* serve the sentence consecutively to the term or terms under which the person was on probation, assigned to a community correctional services program or on parole or conditional release." (Emphasis added.)

Thus, even if Briones is correct that the provisions of K.S.A. 2018 Supp. 21-6606(d) conflict with the provisions of K.S.A. 2018 Supp. 21-6604(f)(4) and allow for concurrent sentences when a defendant commits a new crime while on felony bond, it does not change the outcome of this case. Because Briones was on felony probation in 15CR1370 when he committed his new crime in 16CR2548, K.S.A. 2018 Supp. 21-6606(c) required the district court to impose consecutive sentences. Likewise, K.S.A. 2018 Supp. 22-6604(f)(1) required the district court to impose consecutive sentences.

Briones also contends that K.S.A. 2018 Supp. 21-6606 in its entirety only applies when sentences of imprisonment for different crimes are imposed on a defendant on the same date, and he was not sentenced in 15CR1370 and 16CR2548 on the same date. Our court recently considered and rejected this same argument in *State v. Al-Bureni*, No. 119,274, 2019 WL 985979 (Kan. App. 2019) (unpublished opinion), *petition for rev. filed* April 1, 2019. After a lengthy analysis of the statute, the *Al-Bureni* court held:

> "[W]hen [K.S.A. 2017 Supp. 21-6606] is read as a whole, it is evident that subsections (a) through (e) apply to different situations, and the entire statute is not restricted to

17

multiple sentences for different crimes imposed on the same date. That specific situation is referred to explicitly in subsection (a), which is to be read and interpreted independently from the other subsections." 2019 WL 985979, at *4.

We agree with this analysis. K.S.A. 2018 Supp. 21-6606(a) applies when separate sentences of imprisonment for different crimes are imposed on a defendant on the same date, but this subsection is to be read and interpreted independently from the other subsections of the statute. Subsections (c), (d), and (e) describe circumstances under which the district court must impose consecutive sentences. K.S.A. 2018 Supp. 21-6606(c) not only allowed but required the district court to impose consecutive sentences when Briones committed a new crime while on felony probation.

Finally, we note that in K.S.A. 2018 Supp. 21-6819(a), our Legislature provided an exception to the statutory requirement for consecutive sentences in K.S.A. 2018 Supp. 21-6606(c), (d), and (e) "if such application would result in a manifest injustice." In other words, the district court may deviate from the mandated consecutive sentencing requirement if it makes a finding that imposing consecutive sentences would result in a manifest injustice. Briones did not ask the district court to make a finding of manifest injustice at his sentencing hearing, and he makes no argument on appeal that the district court could have ordered concurrent sentences under K.S.A. 2018 Supp. 21-6819(a).

In summary, Briones committed his new crime in 16CR2548 while he was on felony probation in 15CR1370. The plain and unambiguous language of K.S.A. 2018 Supp. 21-6606(c) and K.S.A. 2018 Supp. 21-6604(f)(1) required the district court to run the sentences in the two cases consecutive. A district court's decision will be upheld if it is correct for any reason. *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015). Thus, the district court did not err by ordering Briones to serve consecutive sentences.

Affirmed.

18