NOT DESIGNATED FOR PUBLICATION

No. 126,862

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DANNY R. MCQUILLIAMS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Submitted without oral argument. Opinion filed March 14, 2025. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., MALONE and CLINE, JJ.

PER CURIAM: Danny R. McQuilliams pled guilty to five counts of sexual exploitation of a child. In the plea agreement, the State promised to recommend imposing the high number in the appropriate Kansas Sentencing Guidelines grid box and it stated that it anticipated McQuilliams' criminal history score would be A. After the plea was entered, the presentence investigation (PSI) report revealed McQuilliams' criminal history score was C and, since he had been convicted of a prior sex offense, the persistent sex offender rule applied. At the plea hearing, the State recommended the district court impose the high number in the sentencing grid box (120 months) and then double that

sentence under the persistent sex offender rule. Ultimately, the district court followed the State's recommendation and sentenced McQuilliams to a controlling sentence of 240 months in prison.

On appeal, McQuilliams argues the State breached the plea agreement by recommending his sentence be doubled and notes the persistent sex offender rule's application was not addressed in the plea agreement. McQuilliams also contends the State's failure to list the persistent sex offender statutory rule for each charge in the charging document prejudiced McQuilliams, making his sentence "arguably illegal."

We find the State did not breach the plea agreement because its recommendation that the district court impose the high sentence in the appropriate grid box was consistent with the plea agreement. While the plea agreement did not anticipate the application of the persistent sex offender rule, McQuilliams was aware of his prior criminal history and the district court was required to impose a sentence consistent with the rule. We also find McQuilliams has failed to preserve his challenge to the charging document, and he did not articulate a valid illegal sentence claim. We therefore affirm McQuilliams' convictions.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged McQuilliams with one count of aggravated indecent liberties with a child, five counts of sexual exploitation of a child, and one count of battery against a law enforcement officer, crimes committed between January 2022 and January 2023. McQuilliams entered into a plea agreement with the State and pled guilty to five counts of sexual exploitation of a child. See K.S.A. 21-5510(a)(2) and (b)(1)(A). The State agreed to dismiss the remaining counts.

2

The plea agreement specified that both parties would recommend the district court impose a high number in the appropriate Kansas Sentencing Guidelines grid box and follow the presumption of imprisonment. They also agreed the State would recommend the court run the sentences consecutive, and McQuilliams would recommend the court run the sentences concurrent. Within the plea agreement, the State noted it anticipated that McQuilliams' criminal history would be A.

McQuilliams signed an acknowledgment of rights and entry of plea the same day he signed his plea agreement. In the acknowledgment, he confirmed that he told his lawyer about all his prior criminal convictions, juvenile adjudications, and expunged convictions. He also acknowledged that he understood that if he failed to do so and additional criminal history was discovered before his sentencing, it could be used to increase his sentence. He also acknowledged that the sentencing judge was not bound to follow the plea agreement and could impose any lawful sentence along with any and all maximum penalties.

At the plea hearing, the district court asked McQuilliams if he had any questions about the plea agreement or his acknowledgment of rights. McQuilliams responded, "Well, no, I guess not. I mean, I don't quite understand some of it, but I'm going to go along with it anyway, even though I don't understand it." His counsel quickly asked for a recess, and the court granted the request. The district court reminded McQuilliams, "Take whatever time. The important thing is that you understand everything 100 percent. And I can't proceed and don't want to proceed unless you do. The other thing is, there's no time crunch. You're in the driver's seat on this."

After the recess, the district court again reminded McQuilliams, "You're in the driver's seat," and "[i]t's whatever you want to do." Then the district court asked whether he was ready to move forward with a plea. McQuilliams responded, "I'll go ahead and go along with the plea." The district court went through his rights and asked if he understood

the plea agreement and his acknowledgment of rights. McQuilliams confirmed his understanding of both with the court.

McQuilliams' counsel noted that the State anticipated his criminal history score would be A. The district court also asked McQuilliams if he understood that the sentence recommendation in the plea agreement is "just a recommendation to me about your sentence" because it is not controlling on the court and that each count carried a 31- to 136-month prison sentence. He responded, "Yes, sir." The district court highlighted that "[a]t sentencing, I'm free to impose any penalty that I think is appropriate that state law provides for." McQuilliams acknowledged this and agreed. He then pled guilty to five counts of sexual exploitation of a child, severity level 5 person felonies.

Before the sentencing hearing, a PSI report was filed, which showed that McQuilliams had a criminal history score of C. The report also showed that McQuilliams had a prior indecent liberties with a child conviction and it noted that Special Rule 5, the persistent sex offender rule, applied. McQuilliams objected to some of the convictions on the PSI report, but he did not object to his conviction for indecent liberties with a child or the application of the persistent sex offender rule. The State did not oppose McQuilliams' objections.

At the sentencing hearing, the district court sustained McQuilliams' objections to the PSI report and removed some of the convictions on the report. The court then asked if the parties agreed with the report's designation of McQuilliams' criminal history score as C. The State and McQuilliams both said they did. The court asked McQuilliams if there was any reason it should not proceed with sentencing and he said, "No, you can go ahead and do it."

The district court then allowed each party to speak. The State asked the court to adopt the parties' recommendations in the plea agreement and sentence McQuilliams to

the high number for each offense. The State also recommended that "all counts be run consecutively," which as the State pointed out "would be capped by the double rule, but essentially, that would get us to a 240-month sentence." The district court asked the State to clarify, and the State said the persistent sex offender rule should be applied for each offense, based on McQuilliams' criminal history. It said that meant the total sentence the court could impose would be "double the top number" of 120 months which would equal 240 months.

McQuilliams' counsel admitted the persistent sex offender rule applied but advocated for a sentence of 120 months, noting McQuilliams' age, his failing health, and the fact that the date of his prior sex conviction that triggered the special rule was 1984. The district court ultimately followed the State's recommendation, applied the persistent sex offender rule, and sentenced McQuilliams to a controlling sentence of 240 months in prison.

On appeal, McQuilliams claims his sentence was illegal and ordered in violation of his due process rights. He asks that we vacate his sentence and remand for resentencing.

REVIEW OF MCQUILLIAMS' APPELLATE CHALLENGES

*Did the State breach the plea agreement?*

McQuilliams claims the State breached the plea agreement by recommending a greater term of imprisonment at sentencing than called for in the agreement.

*Preservation*

McQuilliams did not argue at the sentencing hearing that the State had breached the plea agreement. Generally, issues not raised before the district court cannot be raised

for the first time on appeal. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). But there are exceptions to this general rule: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the district court was right for the wrong reason. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021).

To successfully prove one of these exceptions applies, an appellant is required to explain why an issue not raised below should be considered for the first time on appeal. Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36). The Kansas Supreme Court has cautioned litigants that Supreme Court Rule 6.02(a)(5) is strictly enforced. And by failing to follow Supreme Court Rule 6.02(a)(5), a litigant risks a ruling that the issue was improperly briefed and would be deemed waived or abandoned. *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022). Finally, an appellate court's decision to review an unpreserved claim under an exception is prudential; even if an exception applies, the appellate court is not obligated to review the claim. *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021).

McQuilliams asserts that the first two exceptions to the preservation rule apply. Under the first exception, he argues that whether the State breached the terms of the plea agreement is a question of law. And, more specifically, he points out that the record contains the written plea agreement, plea, and sentencing transcripts, so we can decide this matter on appeal.

As for the second preservation exception, McQuilliams asserts that the State's failure to perform its obligations under the plea agreement violated his right to due process. He concludes that the resolution of whether the State breached the plea agreement is necessary to protect a fundamental right.

Because whether the State breached the plea agreement is a newly asserted legal theory involving a question of law arising from established facts, we choose to review the merits of this issue under the first preservation exception. See *Allen*, 314 Kan. at 283. Additionally, the Kansas Supreme Court has found that when the State fails to fulfill a promise made in the plea agreement, a defendant is denied due process. *State v. Liles*, 313 Kan. 772, 783, 490 P.3d 1206 (2021). If the State breached the plea agreement, there would be a due process violation, so consideration would also be necessary to prevent a violation of a fundamental right under the second preservation exception. See *Allen*, 314 Kan. at 283.

*Standard of review*

Whether the State breached a plea agreement presents a question of law over which appellate courts have unlimited review. *State v. Jones*, 302 Kan. 111, 116, 351 P.3d 1228 (2015).

*McQuilliams did not carry his burden, and he failed to show how the State breached the plea agreement.*

When reviewing whether a plea agreement was breached, Kansas appellate courts will use principles from contract law. An "'application of fundamental contract principles is generally the best means to fair enforcement of a plea agreement, as long as courts remain mindful that the constitutional implications of the plea bargaining process may require a different analysis in some circumstances.'" *State v. Frazier*, 311 Kan. 378, 382, 461 P.3d 43 (2020). "Kansas courts have recognized that contracts, with the exception of at-will employment agreements, contain implied covenants of good faith and fair dealing." *State v. Urista*, 296 Kan. 576, 583, 293 P.3d 738 (2013). "'If the State fails to fulfill a promise it made in a plea agreement, the defendant is denied due process. This is true even if the record indicates that the district court's sentencing decision was not influenced by the State's actions at sentencing.'" *Liles*, 313 Kan. at 783.

7

McQuilliams contends there are at least two ways for the State to breach a plea agreement: by either failing to make the sentencing recommendation it promised or by undermining its recommendation. He contends the State breached his plea agreement by failing to make the recommendation it promised to make in the plea agreement. That is, the State promised to recommend the high grid box number for his crimes, but it recommended double the high number. While he acknowledges the State did so because the PSI report listed a prior sex offense which triggered the persistent sex offender rule, he claims the State had the resources to ascertain his criminal history when negotiating a plea.

The State counters that it did not promise to recommend a specific imprisonment term as part of the plea agreement. Instead, it promised to recommend the district court impose the high number in the appropriate Kansas Sentencing Guidelines grid box—which is exactly what it did. And the State notes that it has no control over the effect of the persistent sex offender rule on McQuilliams' sentence because the district court is required to double the maximum presumptive prison sentence for the offenders' crime of conviction under K.S.A. 21-6804(j)(1).

The State acknowledges that it anticipated McQuilliams' criminal history score would be A, but the PSI report revealed his prior sex offense conviction and established his criminal history score was C. The State notes that it did not guarantee a criminal history score in the plea agreement and McQuilliams should have known the score reflected in his agreement was wrong. Under Kansas law, defendants are presumed to know their criminal history including prior convictions when they enter into a plea agreement. *Porter v. State*, 37 Kan. App. 2d 220, 223-24, 152 P.3d 89 (2007). McQuilliams cites no authority for his contention that the State should have known his history—before the PSI report was issued—and does not explain his failure to correct what he should have known was a mistake. In McQuilliams' acknowledgment of rights for his plea, he represented both that he had told his counsel about his prior convictions

8

and that if he failed to do so and additional criminal history was discovered before his sentencing, that could be used to increase his sentence.

McQuilliams agreed at sentencing that his criminal history score was C, and he did not object to the persistent sex offender designation. The record reveals the district court followed the persistent sex offender rule consistent with the Kansas statutory code and the State followed through with what was written in the plea agreement. See K.S.A. 21-6804(j)(1); K.S.A. 21-6804(j)(2)(A)(i); K.S.A. 22-3717(d)(5)(B). We see no breach of the agreement by the State and therefore affirm the sentence.

*Could the district court consider a prior conviction of indecent liberties with a child and sentence McQuilliams under the persistent sex offender rule?*

McQuilliams argues that because the State's complaint did not cite to K.S.A. 21-6804(j) and it did not charge him with a second sexually violent offense, the district court's sentence did not conform with the penalty provisions of K.S.A. 21-5510(b)(1)(A) making this an "arguably illegal sentence," which violated his due process rights.

The State contends this issue is not preserved because McQuilliams did not raise it before the district court. It also notes that challenges to the sufficiency of charging documents must be timely under K.S.A. 22-3208, like other errors, to be preserved in the district court for appeal. And it points out that Kansas appellate courts generally do not review convictions coming from a defendant's guilty plea where a defendant fails to withdraw his plea, which means we cannot review this issue because McQuilliams did not move to withdraw his plea. Like the first issue, McQuilliams has the burden to show an exception applies to raise this issue on appeal.

9

*McQuilliams did not preserve this issue for appeal.*

K.S.A. 22-3602(a) broadly prohibits an appeal "from a judgment of conviction before a district judge upon a plea of guilty or nolo contendere." A defendant cannot directly appeal from a guilty plea unless the defendant first moves to withdraw the plea and the district court denies the motion. *State v. Hall*, 292 Kan. 862, 866-67, 257 P.3d 263 (2011). Here, McQuilliams did not move to withdraw his guilty plea in the district court, so we are prohibited from reviewing his conviction. See 292 Kan. at 866-67.

McQuilliams does not address this rule on appeal. Instead, he claims his sentence is illegal and points out a defendant may raise an illegal sentence claim for the first time on appeal. *State v. Steinert*, 317 Kan. 342, 351, 529 P.3d 778 (2023). But McQuilliams has not shown how his sentence was illegal. An illegal sentence is defined as a sentence that (1) is imposed by a court without jurisdiction; (2) does not conform to the applicable statutory provisions, either in character or the term of punishment; or (3) is ambiguous about the time and manner in which it is to be served. K.S.A. 22-3504(c)(1); *State v. Mitchell*, 315 Kan. 156, 158, 505 P.3d 739 (2022). As the State notes, McQuilliams did not address how his claim meets the statutory definition of an illegal sentence under K.S.A. 22-3504(c)(1). Nor does he make a constitutional challenge to the sentencing scheme. As such, McQuilliams failed to properly argue that his sentence was illegal.

In addition to failing to raise this below, under K.S.A. 21-6820(c)(1)-(2) an appellate court cannot review "[a]ny sentence that is within the presumptive sentence for the crime" or "any sentence resulting from an agreement between the state and the defendant which the sentencing court approves on the record." Here, the State points out that an imposition of a presumptive sentence cannot be reviewed by an appellate court.

McQuilliams next argues that while his claim that his due process rights were violated is not preserved, we may nonetheless consider it under exceptions to the

10

preservation rule. But these prudential exceptions do not get him around the prohibitions in K.S.A. 22-3602(a), *Hall*, 292 Kan. at 866-67, and K.S.A. 21-6820(c)(1). Nor do we agree that these exceptions necessarily justify consideration of this issue now. We do not see how the State's failure to reference the persistent sex offender rule in the complaint violated McQuilliams' fundamental rights because "complaints don't—and can't—tell a defendant the specific sentences that may be entered because those can't be determined until the defendant's criminal history is determined." See *State v. Tannahill*, No. 100,288, 2010 WL 198484, at *1 (Kan. App. 2010) (unpublished opinion). McQuilliams did not raise a due process issue before the district court, nor did he make an objection to imposition of the persistent sex offender rule to his sentence, which means he is precluded from raising this issue on appeal under our preservation rules.

Affirmed.