IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,598

STATE OF KANSAS,
*Appellee*,

v.

RICHARD DANIEL SHOWALTER
*Defendant*,
(MATTHEW DOUGLAS HUTTO),
*Appellant*.

SYLLABUS BY THE COURT

1.

The Fifth Amendment to the United States Constitution provides that no person shall be compelled in any criminal case to be a witness against himself or herself. The United States Supreme Court has long held this provision is to be liberally construed.

2.

The Fifth Amendment privilege against self-incrimination applies to the states through the Fourteenth Amendment to the United States Constitution.

3.

Section 10 of the Kansas Constitution Bill of Rights provides that no person shall be a witness against himself or herself and extends the same protections against self-incrimination as the Fifth Amendment.

**4.**

The Fifth Amendment provides two distinct privileges against self-incrimination: (1) that of criminal defendants not to be compelled to testify at their own trial and (2) that of any person not to be compelled to answer questions which may incriminate him or her in future criminal proceedings.

**5.**

The privilege against self-incrimination protects a person from being forced to disclose information which would support a criminal conviction against that person as well as that which would furnish a link in the chain of evidence that could lead to a criminal prosecution of that person.

**6.**

The proper standard to determine whether the Fifth Amendment privilege protects a witness from being compelled to testify is whether the testimony sought exposes the witness to a legitimate risk—meaning a real and appreciable danger—of incrimination, not a hypothetical or speculative one. The witness' fear of self-incrimination must be objectively reasonable and the threat discernible for the privilege to apply.

**7.**

A guilty plea constitutes a limited waiver of the privilege against self-incrimination for purposes of establishing guilt. A defendant who waives the privilege by guilty plea retains it for sentencing and until the risk of incrimination terminates.

**8.**

When determining the availability of the privilege against self-incrimination, the risk-of-incrimination standard applies equally when the information sought relates to a witness' prior conviction by verdict or by guilty plea. Language to the contrary in *State v.*

*Longobardi*, 243 Kan. 404, 756 P.2d 1098 (1988), and *State v. Bailey*, 292 Kan. 449, 255 P.3d 19 (2011), is overruled.

9.

The Fifth Amendment privilege against self-incrimination remains available to a defendant or witness who has filed a direct appeal in a criminal case and a decision on appeal is not final (or whose right to file a direct appeal has not expired) when the testimony sought exposes the witness to a legitimate risk of incrimination.

10.

A defendant cannot take a direct appeal from a conviction flowing from a plea of guilty or no contest. The right to take such a direct appeal is one of the rights surrendered when the plea is entered.

11.

A defendant who pleads guilty and moves to withdraw the plea after sentencing pursuant to K.S.A. 22-3210(d)(2) can directly appeal the district court's denial of that motion.

12.

The Fifth Amendment privilege against self-incrimination remains available to a defendant or witness who pled guilty but has filed a postsentence motion to withdraw plea pursuant to K.S.A. 22-3210(d)(2) and (e) and a decision on the motion or a decision on the timely appeal of denial of the motion is not final, when the testimony sought exposes the witness to a legitimate risk of incrimination.

13.

A conviction is generally not considered final until the judgment of conviction has been rendered, the availability of an appeal has been exhausted, and the time for any rehearing or final review has passed.

Review of the judgment of the Court of Appeals in 62 Kan. App. 2d 675, 522 P.3d 292 (2022). Appeal from Shawnee District Court; DAVID B. DEBENHAM, judge. Oral argument held September 11, 2023. Opinion filed August 2, 2024. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the sentence is vacated.

*Shawna R. Miller*, of Miller Law Office, LLC, of Holton, argued the cause and was on the briefs for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, argued the cause, and *Derek Schmidt*, former attorney general, and *Kris W. Kobach*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

STANDRIDGE, J.: Matthew Douglas Hutto pled guilty to two counts of felony murder and received two consecutive hard 25 life sentences. After sentencing, Hutto filed a pro se motion to withdraw his pleas. The district court denied his motion and this court affirmed. In the interim period between this court announcing its decision and the deadline to file a motion for rehearing or modification, Hutto refused to testify against Richard Daniel Showalter, his accomplice in the felony murders, by invoking his Fifth Amendment privilege against self-incrimination. The district court ruled Hutto no longer had a privilege against self-incrimination, but Hutto still refused to testify. The district court entered an order finding Hutto in contempt and imposed a sanction of six months in jail.

4

Hutto appealed the district court's finding of direct contempt and the sanction. Relying on *State v. Smith*, 268 Kan. 222, 235, 993 P.2d 1213 (1999), Hutto argued he retained the privilege against self-incrimination at the time he refused to testify because he had not yet exhausted all methods of attacking his convictions and sentences, including a Supreme Court Rule 7.06 motion for rehearing or modification of this court's decision on his request to withdraw his guilty pleas and a possible K.S.A. 60-1507 motion for habeas corpus relief. (2024 Kan. S. Ct. R. at 51). A Court of Appeals panel rejected Hutto's argument, questioning *Smith*'s holding given the weight of our precedent establishing defendants lose their privilege against self-incrimination at sentencing when they plead guilty and do not move to withdraw their plea before sentencing. *State v. Showalter*, 62 Kan. App. 2d 675, 687-90, 522 P.3d 292 (2022). Because Hutto did not move to withdraw his guilty pleas before sentencing, the panel found the district court correctly directed Hutto to testify because he lost his privilege against self-incrimination when sentenced for those crimes. Thus, the panel affirmed the finding of direct contempt for violating the district court's directive. 62 Kan. App. 2d at 692-93.

On review, we hold the proper standard to determine whether the Fifth Amendment privilege protects a witness from being compelled to testify is whether the testimony sought exposes the witness to a legitimate risk—meaning a real and appreciable danger—of incrimination, not a hypothetical or speculative one. The witness' fear of self-incrimination must be objectively reasonable and the danger discernible for the privilege to apply.

In line with controlling federal precedent on availability of the privilege when there is a legitimate risk of incrimination present, including after a guilty plea, we hold the risk-of-incrimination standard applies equally when the information sought relates to a witness' prior conviction by verdict or by guilty plea, overruling *State v. Longobardi*,

243 Kan. 404, 409, 756 P.2d 1098 (1988), and *State v. Bailey*, 292 Kan. 449, 461-63, 255 P.3d 19 (2011).

Consistent with this standard and the weight of authority across the country, we hold the Fifth Amendment privilege remains available to a defendant or witness who filed a direct appeal in a criminal case and a decision on appeal is not final (or whose right to file a direct appeal has not expired), when the testimony sought exposes the witness to a legitimate risk of incrimination.

Finally, we have construed a defendant's statutory right to withdraw a guilty plea postsentence under K.S.A. 22-3210(d)(2) as implying a right to directly appeal the district court's denial of that motion. In such a case, compelled testimony relating to the underlying crime could expose the defendant to a legitimate risk of incrimination if the relief was granted and the defendant was retried. Therefore, we hold the privilege similarly remains available to a defendant or witness who pled guilty but has filed a postsentence motion to withdraw plea pursuant to K.S.A. 22-3210(d)(2) and (e) and a decision on the motion or a decision on the timely appeal of denial of the motion is not final, when the testimony sought exposes the witness to a legitimate risk of incrimination.

Applying this standard and our related holdings to the facts here, we conclude Hutto faced a legitimate risk of incrimination if forced to testify to the specific question posed to him in Showalter's trial about how he caused the victims to die. At that time, Hutto still had a legally viable opportunity to challenge this court's decision denying him relief by filing a motion for rehearing or modification as part of his direct appeal. And if such relief was granted, Hutto's response to the question in Showalter's trial could have incriminated him in a new trial. Having properly invoked the Fifth Amendment privilege, Hutto could not be punished for refusing to testify. We therefore reverse the district court's order finding Hutto in contempt and vacate the sanction of six months in jail.

6

The relevant facts relating to Hutto's felony-murder convictions are detailed in *State v. Hutto*, 313 Kan. 741, 490 P.3d 43 (2021). Highly summarized, the State charged Hutto with two counts of premeditated first-degree murder and single counts of conspiracy to commit first-degree murder and aggravated burglary. The charges were based on evidence suggesting Hutto and three other men took part in the July 2018 murders of Lisa Sportsman and 17-year-old J.P. The State later amended its complaint to include two alternative counts of felony murder and one count each of attempted first-degree murder and possession of methamphetamine. Hutto told law enforcement he and the other men traveled from Greenleaf, Kansas, to Topeka, Kansas, to kill Sportsman. Hutto claimed Showalter committed both murders but admitted he helped Showalter enter Sportsman's house and followed Showalter inside. 313 Kan. at 742-44.

On January 18, 2019, Hutto pled guilty to the two counts of felony murder in exchange for the State's dismissal of the remaining charges. The district court sentenced Hutto to two consecutive hard 25 life sentences on May 10, 2019. *Hutto*, 313 Kan. at 744.

Twelve days after he was sentenced, on May 22, 2019, Hutto filed a pro se motion with the district court seeking posttrial relief on several grounds, including various trial errors, prosecutorial misconduct, and ineffective assistance of his plea counsel he claimed resulted in a manifest injustice that justified withdrawing his guilty pleas. *Hutto*, 313 Kan. at 744. The district court construed Hutto's motion as a postsentence motion to withdraw a guilty plea, which is permitted under K.S.A. 22-3210(d)(2). The court appointed new counsel, held an extensive hearing on the motion, and eventually found against Hutto on all points raised in his motion, issuing its decision on February 11, 2020.

Less than a week later, on February 17, 2020, Hutto filed an appeal of the district court's denial of his postsentence motion to withdraw his guilty pleas.

We affirmed the district court in an opinion filed on July 9, 2021. *Hutto*, 313 Kan. at 751. Just days later, and before expiration of the deadline for filing a Supreme Court Rule 7.06 motion for rehearing or modification of this court's decision on his request to withdraw his guilty pleas, a jury trial began for Showalter, Hutto's felony-murder accomplice. The State subpoenaed Hutto to testify and granted him "use immunity" to do so. But when the State called him to the stand on July 13, 2021, he refused. Outside the jury's presence, the State questioned Hutto about his felony-murder convictions. When the prosecutor asked Hutto why he was convicted of felony murder, Hutto responded, "I told you guys that I'm not testifying. I plead the Fifth." The prosecutor advised the district court that Hutto "no longer ha[d] an evidentiary privilege to refuse to testify" because he was already sentenced for his crimes and because this court affirmed the denial of his postsentence motion to withdraw his guilty pleas.

The district court agreed and directed Hutto to testify. The court warned Hutto that, if he refused, it could find him in contempt of court and impose up to a six-month jail sanction. Despite the court's warning, Hutto still refused to testify, claiming there was no reason to do so because he was already serving "50-plus years" for his felony-murder convictions. As a result, the court found Hutto in direct contempt of court. The court did not immediately impose sanctions, opting instead to allow Hutto the opportunity to purge himself of contempt later in the proceedings. But when the State recalled Hutto to the stand again on July 16, 2021, he still refused to testify. Given the court's prior contempt ruling, it ordered Hutto to serve 6 months in jail as a sanction, independent of his two existing, consecutive hard 25 life sentences.

8

Hutto appealed the district court's finding of direct contempt, arguing the court erred in deciding he no longer had a Fifth Amendment privilege against self-incrimination when he refused to testify at Showalter's trial. Relying on *Smith*, Hutto asserted that a person continues to have a Fifth Amendment privilege against self-incrimination until the person has exhausted all methods of attacking an underlying criminal conviction and sentence, which in his case would include a motion for rehearing or modification with this court under Supreme Court Rule 7.06 and a potential motion for habeas corpus relief under K.S.A. 60-1507.

A Court of Appeals panel acknowledged our holding in *Smith* but rejected Hutto's argument, holding the weight of our precedent establishes that defendants lose their privilege against self-incrimination at sentencing when they plead guilty and do not move to withdraw their plea before sentencing. Because Hutto was sentenced before he tried to withdraw his felony-murder guilty pleas, the panel found he lost his privilege against self-incrimination when sentenced for those crimes. As a result, the panel concluded the district court correctly directed Hutto to testify and affirmed the finding of contempt for violating the district court's directive. *Showalter*, 62 Kan. App. 2d at 686-87, 690-93.

We granted Hutto's petition for review. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

ANALYSIS

The issue presented is whether Hutto had a Fifth Amendment privilege against self-incrimination that protected him from testifying to matters underlying his convictions when he first refused to testify at Showalter's trial on July 13, 2021. To resolve this issue,

9

we must determine (1) the proper standard to assess whether a witness can invoke the Fifth Amendment privilege to prevent compelled testimony; (2) whether that standard should be different when the witness has pled guilty rather than being convicted by verdict; and (3) whether the privilege can be asserted after sentencing and, if so, under what circumstances.

Hutto argues the applicable standard permits a defendant to invoke the privilege to prevent compelled testimony until a defendant has exhausted all methods of attacking underlying criminal convictions and sentences, and the standard applies equally when the information sought relates to a witness' prior conviction by verdict or by guilty plea. See *Smith*, 268 Kan. at 235. The State disagrees, claiming Kansas applies a bright-line standard for termination of the privilege when a defendant pleads guilty in an underlying case: the privilege is lost at sentencing unless a motion to withdraw that plea was filed before sentencing. See *Longobardi*, 243 Kan. at 409.

The panel ultimately held Kansas Supreme Court precedent favors the State's position: "Because Hutto had entered his felony murder guilty pleas and had been sentenced for those crimes without first moving to withdraw his guilty pleas, his privilege against self-incrimination ended upon sentencing." *Showalter*, 62 Kan. App. 2d at 691. But missing from our privilege precedent, and in turn from the panel's analysis, is recognition of United States Supreme Court precedent on the limited effect of a guilty plea on the Fifth Amendment privilege. See *Mitchell v. United States*, 526 U.S. 314, 316, 321, 326, 119 S. Ct. 1307, 143 L. Ed. 2d 424 (1999) (holding a guilty plea is not a waiver of the privilege against self-incrimination beyond the guilt-phase of a criminal proceeding). Because it is necessary to determine whether our precedent adheres to the high Court's interpretation of the federal Constitution, we begin with that review.

10

I.   *Federal privilege law*

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. The resulting privilege against compulsory self-incrimination fulfills the essential role in our adversarial justice system of ensuring the State achieves criminal convictions by its own efforts, not by the forced disclosures of the accused. See *Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52, 55, 84 S. Ct. 1594, 12 L. Ed. 2d 678 (1964); *Ullmann v. United States*, 350 U.S. 422, 427, 76 S. Ct. 497, 100 L. Ed. 511 (1956). Based on the fundamental importance of the privilege to principles of liberty and due process, the United States Supreme Court has long held this constitutional provision must be liberally construed. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1118 (1951).

The Fifth Amendment privilege is far from absolute. It must be timely and affirmatively invoked or else it is lost. *Roberts v. United States*, 445 U.S. 552, 559, 100 S. Ct. 1358, 63 L. Ed. 2d 622 (1980). And it only protects individuals from making factual disclosures that are testimonial, compelled, and incriminating in nature. *Hiibel v. Sixth Judicial Dist. Court of Nevada*, 542 U.S. 177, 189, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2004).

The Fifth Amendment includes two distinct privileges against self-incrimination: (1) that of criminal defendants not to be compelled to testify at their own trial and (2) that of any person not to be compelled to answer questions which may incriminate him or her in future criminal proceedings. *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S. Ct. 16, 69 L. Ed. 158 (1924). This includes witnesses called to testify—"in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory"—when the answer could subject them to criminal liability. *Kastigar v. United States*, 406 U.S. 441, 444-45,

11

92 S. Ct. 1653, 32 L. Ed. 2d 212 (1972). Along with protecting answers which would support a criminal conviction, the privilege also protects information which "would furnish a link in the chain of evidence" that could lead to a criminal prosecution. *Hoffman*, 341 U.S. at 486.

The scope of a witness' privilege differs depending on the status of the person asserting it. While defendants can invoke a blanket privilege not to testify at their own trial, a compelled witness may only assert the privilege on a question-by-question basis and must establish a legitimate risk of incrimination to justify silence. See generally 3 Crim. Prac. Manual § 88:9 ("The rights of an accused and the rights of a witness differ. The Fifth Amendment allows the accused to refuse even to take the stand. A witness, however, must take the stand when called and then assert the privilege in response to a particular question.").

A. *Risk-of-incrimination standard*

The United States Supreme Court first articulated a formal risk-of-incrimination standard well over a hundred years ago in *Brown v. Walker*, 161 U.S. 591, 599-600, 16 S. Ct. 644, 40 L. Ed. 819 (1896). The Court found a valid assertion of the Fifth Amendment privilege exists only when a witness faces a "real and appreciable" danger from compelled testimony based on an objective standard:

> "[T]he danger to be apprehended must be real and appreciable, with reference to the ordinary operation of law in the ordinary course of things; not a danger of an imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct." *Brown*, 161 U.S. at 599-600.

Based on this standard, the risk of incrimination triggering Fifth Amendment protection is measured by a reasonable fear of an appreciable danger. These requirements reflect the underlying condition that the privilege is available only when the danger it is meant to protect against actually exists.

Since *Brown*, the Court has expressed this standard in various, similar ways to convey that the risk to be feared must be of a consequential nature to warrant the Fifth Amendment's protection. See, e.g., *Zicarelli v. New Jersey State Comm'n of Investigation*, 406 U.S. 472, 478, 92 S. Ct. 1670, 32 L. Ed. 2d 234 (1972) ("It is well established that the privilege protects against real dangers, not remote and speculative possibilities."); *Marchetti v. United States*, 390 U.S. 39, 53, 88 S. Ct. 697, 19 L. Ed. 2d 889 (1968) ("The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination."); *Mason v. United States*, 244 U.S. 362, 365, 37 S. Ct. 621, 61 L. Ed. 1198 (1917) ("The constitutional protection against self-incrimination 'is confined to real danger, and does not extend to remote possibilities out of the ordinary course of law.'").

More recently in *Mitchell*, the Court expressed the risk-of-incrimination standard in broader terms by recognizing that the danger faced by a witness in responding to questions extends to other "adverse consequences" beyond criminal prosecution and conviction. See 526 U.S. at 326. Mitchell was charged in federal court for her alleged role in a cocaine distribution conspiracy. She pled guilty to all counts but reserved the right to contest the drug quantity at sentencing. When sentencing came and some of her codefendants put on evidence, Mitchell asserted her Fifth Amendment privilege against self-incrimination and opted not to testify. Because of her guilty plea, the district court found Mitchell had lost the right to remain silent about the details of her crime and held her silence against her when imposing a harsher sentence. The Third Circuit affirmed, holding a guilty plea constitutes a permanent waiver of the Fifth Amendment privilege.

13

As part of that decision, the appellate court concluded the Fifth Amendment does not protect against the risk of an increased sentence after a guilty plea. See *United States v. Mitchell*, 122 F.3d 185, 189-90 (3d Cir. 1997).

The Supreme Court reversed, holding a defendant who pleads guilty retains the Fifth Amendment privilege at sentencing, resolving a circuit split on this issue in the process. See Phelps, *Applicability of the Fifth Amendment Privilege Against Self-incrimination at Sentencing: Mitchell v. United States Settles the Conflict*, 38 Brandeis L.J. 107, 109 (1999). One of the key aspects of the Court's decision was its recognition that a conviction, including one by guilty plea, does not eliminate the possibility of further incrimination. See *Mitchell*, 526 U.S. at 326. The Court noted the constitutional protection against compulsory self-incrimination was always meant to ensure "'that the State which proposes to convict *and punish* an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.'" 526 U.S. at 326 (quoting *Estelle v. Smith*, 451 U.S. 454, 462, 101 S. Ct. 1866, 68 L. Ed. 2d 359 [1981]). Since the risk of incrimination extends beyond conviction (the guilt-phase of criminal proceedings), the Court held the Fifth Amendment privilege must be available past this point at least through sentencing. 526 U.S. at 326.

In discussing the risk of postconviction incrimination, the Court first acknowledged the underlying principle "that where there can be no further incrimination, there is no basis for the assertion of the privilege." *Mitchell*, 526 U.S. at 326. The Court then explained this general rule "applies to cases in which the sentence has been fixed and the judgment of conviction has become final." 526 U.S. at 326. Finally, the Court declared that the risk of incrimination is eliminated when "no adverse consequences can be visited upon the convicted person by reason of further testimony." 526 U.S. at 326.

Although the "adverse consequences" phrasing in *Mitchell* differs from the "real and appreciable" language previously used by the Court, the root concept is not new. The availability of the privilege has always required some legal detriment bearing on criminal liability. See *Rogers v. United States*, 340 U.S. 367, 373, 71 S. Ct. 438, 95 L. Ed. 344 (1951) ("the privilege against self-incrimination presupposes a real danger of legal detriment arising from the disclosure"); see generally Wigmore on Evidence § 2279, p. 481 (1961) ("Legal criminality consists in liability to the law's punishment. When that liability is removed, criminality ceases; and with the criminality the privilege."). The *Mitchell* Court also expressed that a convicted person's "fear of adverse consequences" warranting Fifth Amendment protection must be "legitimate"—evoking the underlying standard from *Brown* and its progeny that this fear be reasonable and based on a discernible risk from compelled testimony. See *Mitchell*, 526 U.S. at 326. Viewed in this context, the language in *Mitchell* complements the existing framework and roughly defines the outer limit of the privilege postconviction. It also implies a case-by-case analysis of the risk of incrimination is crucial.

B. *Waiver of the Fifth Amendment privilege*

Like other constitutional rights, the privilege against self-incrimination can be waived. A person waives the privilege by failing to assert it, by voluntarily testifying, or by pleading guilty to a crime. The type of waiver determines its scope and the extent of any privilege that remains. The State can also remove the risk of incrimination by a sufficient offer of immunity that is coextensive with constitutional protections. *Kastigar*, 406 U.S. at 449.

1. *Broad waiver by voluntary testimony—extends to all relevant information*

The Supreme Court has distinguished between a waiver of the privilege by agreeing to testify and a waiver by pleading guilty to a crime. The first type of waiver is a

15

broad waiver, which removes the privilege for the information disclosed and requires a full disclosure of all relevant details. *Rogers*, 340 U.S. at 373-74 ("[W]here criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details."). In this situation, a strong judicial interest in preserving the integrity of the court's fact-finding mission warrants requiring an extensive waiver. To do otherwise would transform the Fifth Amendment from a constitutional "safeguard against judicially coerced self-disclosure" into "a positive invitation to mutilate the truth a party offers to tell." *Brown v. United States*, 356 U.S. 148, 156, 78 S. Ct. 622, 2 L. Ed. 2d 589 (1958).

## 2. *Narrow waiver by guilty plea—limited to guilt phase of trial*

By contrast, the Court has held an accused's waiver of the privilege by guilty plea serves an entirely different function and does not pose the same risks to the judicial process as voluntary, selective testimony. *Mitchell*, 526 U.S. at 319-25. In *Mitchell*, the Court acknowledged that a guilty plea necessarily removes the privilege against self-incrimination for establishing guilt by taking those matters out of dispute. 526 U.S. at 323. A plea also waives the right to a trial by jury, to be presumed innocent, and to force the State to put on evidence to prove guilt. See *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). But the *Mitchell* Court explained that "the defendant who pleads guilty puts nothing in dispute regarding the essentials of the offense." 526 U.S. at 323 (a "guilty plea is more like an offer to stipulate than a decision to take the stand"). The Court explained why a broader waiver in this instance would defeat the fundamental due process interest at stake:

> "Were we to accept the Government's position, prosecutors could indict without specifying the quantity of drugs involved, obtain a guilty plea, and then put the defendant on the stand at sentencing to fill in the drug quantity. The result would be to enlist the defendant as an instrument in his or her own condemnation, undermining the long tradition and vital principle that criminal proceedings rely on accusations proved by the

16

Government, not on inquisitions conducted to enhance its own prosecutorial power." 526 U.S. at 325.

Since *Mitchell*, federal and state courts addressing the issue now recognize that a guilty plea does not constitute a broad waiver of the Fifth Amendment privilege against self-incrimination. See, e.g., *United States v. Rivas-Macias*, 537 F.3d 1271, 1280 (10th Cir. 2008); *United States v. Warren*, 338 F.3d 258, 263 (3d Cir. 2003); *United States v. Smith*, 245 F.3d 538, 543 (6th Cir. 2001); *Landeverde v. State*, 769 So. 2d 457, 462-64 (Fla. Dist. Ct. App. 2000); *State v. Garber*, 674 N.W.2d 320, 326 (S.D. 2004); *State v. Worthington*, 8 S.W.3d 83, 92 (Mo. 1999); *Carroll v. State*, 42 S.W.3d 129, 132 (Tex. Crim. App. 2001).

II. *Kansas privilege law*

The Fifth Amendment privilege against self-incrimination applies to the states through the Fourteenth Amendment to the United States Constitution. *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964); *State v. Brown*, 286 Kan. 170, 172-73, 182 P.3d 1205 (2008). This court has held section 10 of the Kansas Constitution Bill of Rights grants the same protections against compelled self-incrimination as the Fifth Amendment. *State v. Faidley*, 202 Kan. 517, 520, 450 P.2d 20 (1969). Additionally, we liberally construe constitutional provisions securing personal rights, including the Fifth Amendment privilege. *State v. Morris*, 255 Kan. 964, 981, 880 P.2d 1244 (1994).

The Kansas Legislature has codified an individual's privilege against self-incrimination under K.S.A. 60-425 and also statutorily defined "incrimination" under K.S.A. 60-424. With regard to this definition, this court has held Kansas' "constitutional

17

prohibition against self-incrimination is broader than [the state] statute's definition." *State v. Green*, 254 Kan. 669, 679, 867 P.2d 366 (1994).

Consistent with federal precedent, this court has held the State can remove the fear of incrimination, thereby eliminating the privilege, by a sufficient grant of immunity in return for the witness' testimony. The combination of "use and derivative use" immunity is sufficient to compel incriminating testimony because it protects a witness from the use of compelled testimony and any evidence derived therefrom. *State v. Delacruz*, 307 Kan. 523, 525, 534-35, 411 P.3d 1207 (2018) (citing *Kastigar*, 406 U.S. at 453).

A. *Kansas standard to assess availability of the Fifth Amendment privilege*

As a general rule, this court's privilege decisions refer to a risk-of-incrimination standard when considering whether a convicted and sentenced witness has a valid Fifth Amendment privilege. See, e.g., *State v. George*, 311 Kan. 693, 708, 466 P.3d 469 (2020) (the privilege "'protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might so be used'"); *Delacruz*, 307 Kan. at 534 ("a witness who has no reasonable cause to fear incrimination cannot invoke the right"); *Green*, 254 Kan. at 679 ("The Fifth Amendment operates only where a witness is asked to incriminate himself or herself; that is, to give testimony which could possibly expose the witness to a criminal charge."); *State v. Larry*, 252 Kan. 92, 96, 843 P.2d 198 (1992) (same), *holding modified on other grounds by State v. Solomon*, 257 Kan. 212, 891 P.2d 407 (1995). Although this court has expressed the standard in different ways, the underlying principle is the same and aligns with our current interpretation of the federal standard: a convicted defendant or witness may invoke the privilege by establishing a legitimate—meaning a real and appreciable—risk of incrimination if compelled to testify.

But significant here, this court has departed from its own general risk-of-incrimination standard to create an exception when assertion of the privilege follows a guilty plea. Under those circumstances, we construed the plea as a broad waiver of the Fifth Amendment privilege that terminates absolutely upon sentencing, rather than when there is no longer a legitimate risk of incrimination. See, e.g., *Longobardi*, 243 Kan. at 409 (holding "once a plea of guilty has been regularly accepted by the court, and no motion is made to withdraw it, the privilege against self-incrimination ends after sentence is imposed"). This has resulted in different outcomes on availability of the privilege depending on the type of conviction. Compare *Delacruz*, 307 Kan. at 533-35 (reversing contempt order of convicted witness who refused to testify at codefendant's trial because he was appealing his state conviction and the State's grant of immunity did not protect him from federal prosecution), with *Bailey*, 292 Kan. at 461-63 (finding a witness who pled guilty and had been sentenced, but was appealing his conviction, no longer had a Fifth Amendment privilege when called to testify at codefendant's trial). As we resolve this inconsistency in our Fifth Amendment jurisprudence, it helps to understand how we got here.

B. *Waiver of the privilege*

1. *Kansas* Anderson-Longobardi *bright-line rule*

Within Kansas caselaw, *State v. Anderson*, 240 Kan. 695, 732 P.2d 732 (1987), is the starting point for the scope of a witness' Fifth Amendment privilege after pleading guilty. In *Anderson*, this court held an accused who pled guilty but who had not yet been sentenced could still assert the Fifth Amendment privilege as a witness in an accomplice's trial. 240 Kan. at 700-01. Anderson pled guilty to aggravated robbery but then tried to withdraw his plea before sentencing, which the district court denied. When Anderson was called to testify against a codefendant, his time to appeal the denial of his motion to

19

withdraw his guilty plea had not yet expired. On this basis, Anderson argued he should still be able to invoke his privilege against self-incrimination.

This court began its analysis by noting the "general rule" that "a witness cannot claim a Fifth Amendment privilege with respect to those matters to which he has pled guilty." *Anderson*, 240 Kan. at 699-700 (citing 9 A.L.R. 3d 990, § 2 [1966]). The court then considered a body of persuasive federal and state authority holding the privilege against self-incrimination extends *at least* until a sentence has been imposed and in some cases beyond that point. See 240 Kan. at 700-01 (citing multiple authorities holding the Fifth Amendment privilege may be invoked after a guilty plea where there is a continued risk of self-incrimination or impact on the disposition of an appeal). Ultimately, this court similarly held that a witness in Anderson's situation, having pled guilty but awaiting sentencing, had not waived his privilege against self-incrimination. 240 Kan. at 701. *Anderson* fit within the mainstream of the considered authority at the time and followed federal precedent, which preserved the Fifth Amendment privilege through the penalty phase of a defendant's criminal proceeding. See *Estelle*, 451 U.S. at 462-63.

Just a year after *Anderson*, this court limited that ruling in *Longobardi*. While *Anderson* permissively held a witness who pled guilty could still invoke the privilege against self-incrimination through sentencing, the *Longobardi* holding was framed in restrictive terms—cutting off the privilege at sentencing without a successful withdrawal of the plea. See *Longobardi*, 243 Kan. at 409 ("[O]nce a plea of guilty has been regularly accepted by the court, and no motion is made to withdraw it, the privilege against self-incrimination ends after sentence is imposed."). In the process, the court considered two standards from Supreme Court caselaw: requirements for a valid waiver of a constitutional right and a version of the federal risk-of-incrimination standard. See 243 Kan. at 409 (citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 [1969], and *Ullmann*, 350 U.S. at 431). But the court was clearly more focused on

20

the first of these, as to waiver, and appeared to conclude that as long as the guilty plea satisfied the knowing-and-voluntary-waiver standard, there could be no further risk of incrimination after sentencing. The witness in *Longobardi* asserted the Fifth Amendment privilege on grounds that the time for an appeal, rehearing, or sentence modification had not yet passed. This court rejected that contention outright. See *Longobardi*, 243 Kan. at 409.

*Longobardi* marks Kansas' adoption of a special, bright-line rule for terminating the privilege against self-incrimination after a guilty plea and once a sentence is imposed, which has since been the controlling precedent for this jurisdiction. See *George*, 311 Kan. at 709; *State v. Soto*, 301 Kan. 969, 980, 349 P.3d 1256 (2015); *Bailey*, 292 Kan. at 460; *Green*, 254 Kan. at 678. There are two problems with this line of precedent. First, the *Longobardi* rule treats a guilty plea as a broad waiver of the Fifth Amendment privilege and therefore a special kind of conviction which terminates the right absolutely upon sentencing. As discussed, this conflicts with *Mitchell*, which definitively held a guilty plea is only a limited waiver of the privilege against self-incrimination to establish guilt and does not extend beyond that phase of the original criminal proceeding. See *Mitchell*, 526 U.S. at 315 ("Treating a guilty plea as a waiver of the privilege [beyond the confines of the guilt phase of trial] would be a grave encroachment on defendants' rights."). The Court's analysis in *Mitchell* confirms that a guilty plea is unrelated to the availability of the privilege postsentence, other than being the means of conviction and thereby limiting the types of postconviction challenges available. And second, the *Longobardi* rule cutting off the privilege at sentencing departs from the flexible federal approach that frames the availability of the privilege in terms of the risk of self-incrimination.

*2.* State v. Smith: *Extension of the Fifth Amendment privilege postsentence*

In his petition, Hutto focused exclusively on *Smith*, which was decided in the same year as *Mitchell* and appeared to extend the Kansas privilege rule "until there is a final judgment in a case and a right to appeal has expired." 268 Kan. at 235 (citing *State v. Aldape*, 14 Kan. App. 2d 521, 526, 794 P.2d 672 [1990]). *Smith* dealt mostly with the Sixth Amendment confrontation right and only speculated that codefendants would have retained the Fifth Amendment privilege and therefore would not necessarily have been available as exculpatory witnesses. Of note, the potential witnesses in *Smith* had not pled guilty so waiver was not an issue that was raised or discussed.

In *Smith*, this court properly looked to a risk-of-incrimination standard for when the privilege applies, noting "'it protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might be so used.'" 268 Kan. at 235 (citing *State v. Lekas*, 201 Kan. 579, 589, 442 P.2d 11 [1968]). This recitation of the rule is close to the United States Supreme Court's standards. See *Brown*, 161 U.S. at 599 ("danger to be apprehended must be real and appreciable"), and *Malloy*, 378 U.S. at 11 ("'The privilege afforded not only extends to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute."). But the *Smith* court did not engage in further analysis on the continued risk of incrimination the codefendants faced that would warrant continued availability of the privilege as contemplated by *Mitchell*. Instead, it simply announced the extent of the privilege postsentence as stated above: "until there is a final judgment in a case and a right to appeal has expired." *Smith*, 268 Kan. at 235.

The *Showalter-Hutto* panel found *Smith* incompatible with this court's privilege decisions in the context of a guilty plea. See *Showalter*, 62 Kan. App. 2d at 687-88. We

note *Smith* is distinguishable from this line of cases because the witness in *Smith* had not pled guilty. See *Smith*, 268 Kan. at 226. *Smith* appears to be consistent with federal precedent in that it references the proper risk-of-incrimination standard and also agrees with the majority rule on availability of the privilege postsentence. Even so, we do not adopt its stated rule for availability of the privilege because it also terminates the privilege at a definite procedural point rather than when the risk of incrimination ends. Therefore, we neither overturn nor adopt *Smith*. It is merely one of many cases in our privilege decisions in which we referenced availability of the privilege up to a certain phase of the criminal proceedings in the context of the facts presented.

### 3. *Modern Application of* Longobardi *rule:* State v. Bailey

As explained, the *Longobardi* rule fails to use a risk-of-incrimination standard to test whether a witness may invoke the Fifth Amendment privilege. This court's decision in *State v. Bailey* aptly illustrates this problem.

On appeal, Bailey challenged the availability of the Fifth Amendment privilege for two of the State's key witnesses. For the first witness, Cheryl Starr, Bailey argued the court improperly advised Starr that she did not have a Fifth Amendment privilege. At the time of Bailey's trial, Starr was serving a 12-year sentence after pleading guilty to second-degree murder, robbery, and aggravated burglary. Notably, Starr did not file an appeal or otherwise challenge her conviction. Applying *Longobardi*, this court held Starr had no Fifth Amendment privilege with regard to the charges because she was sentenced and had not moved to withdraw her guilty plea. *Bailey*, 292 Kan. at 461. As applied to Starr, the *Longobardi* rule largely achieved the right result, though not because Starr pled guilty and did not withdraw her plea before sentencing; rather, Starr had no privilege because she no longer faced a risk of incrimination as to the facts supporting her completed conviction.

23

Bailey made the opposite argument for a second witness, DaQuan Dean, who had also pled guilty and been sentenced but who *had* filed a notice of appeal. Bailey argued Dean still had a Fifth Amendment privilege, so the State should not have called him as a witness. This court affirmed the district court's finding that Dean had no privilege against self-incrimination because of his guilty plea and imposition of sentence, regardless of his pending appeal. *Bailey*, 292 Kan. at 461-63. In Dean's case, the *Longobardi* rule precluded the essential inquiry: whether he still faced a risk of incrimination after sentencing, pending his appeal. *Bailey* underscores the need to align our Fifth Amendment privilege standards with federal law.

III. *Aligning Kansas privilege law with risk-of-incrimination principles*

A. *Adopting the risk-of-incrimination standard as our guiding principle*

In its brief, the State argues the general rule expressed in *Mitchell* should be interpreted as a bright-line rule cutting off the privilege after sentencing. The State asserts *Mitchell's* reference to the privilege being available until "the judgment of conviction has become final" meant that the privilege terminates when a district court issues a final, appealable order. But the State fails to recognize the overarching guiding principle in this inquiry has always been whether there is a legitimate risk of incrimination to the witness, not the procedural point at which the judgment is considered "final" for purposes of appeal. Nor do we read *Mitchell* as establishing sentencing or finality of judgment as the clear and definitive point at which the risk of self-incrimination always ends. See, e.g., *Milke v. City of Phoenix*, 325 F. Supp. 3d 1008, 1015-16 (D. Ariz. 2018) ("[A] conviction should qualify as 'final' [under *Mitchell*], such that the privilege does not apply, when an individual is no longer facing 'substantial and real . . . hazards of incrimination.'") (quoting *Marchetti*, 390 U.S. at 53).

24

In accordance with *Mitchell*, the proper standard to determine whether the Fifth Amendment privilege protects a witness from being compelled to testify is whether the testimony sought exposes the witness to a legitimate risk—meaning a real and appreciable danger—of incrimination, not a hypothetical or speculative one. The witness' fear of self-incrimination must be objectively reasonable and the threat discernible for the privilege to apply. Consistent with this approach, we decline to adopt a bright-line rule cutting off the privilege at any specific procedural point.

B.  *Eliminating the* Longobardi *bright-line exception for guilty pleas*

Our privilege caselaw has yet to recognize that a guilty plea is only a limited waiver of the privilege against self-incrimination for establishing guilt and does not, on its own, impact the availability of the privilege beyond that point. This was the central holding in *Mitchell*, which we are duty-bound to follow when interpreting the Fifth Amendment. See 526 U.S. at 329-30. Thus, we hold the risk-of-incrimination standard applies equally when the information sought relates to a witness' prior conviction by verdict or by guilty plea, overruling *Longobardi* and *Bailey*.

"'We do not overrule precedent lightly and must give full consideration to the doctrine of stare decisis.'" *State v. Johnson*, 317 Kan. 458, 467, 531 P.3d 1208 (2023). "We recognize that '[t]he application of stare decisis ensures stability and continuity— demonstrating a continuing legitimacy of judicial review. Judicial adherence to constitutional precedent ensures that all branches of government, including the judicial branch, are bound by law.'" *Herington v. City of Wichita*, 314 Kan. 447, 456, 500 P.3d 1168 (2021).

Yet stare decisis "'is not a rigid inevitability but a prudent governor on the pace of legal change.'" *Herington*, 314 Kan. at 456. "While this court is not inexorably bound by its own precedent, we generally will follow the law of earlier cases unless clearly convinced that the rule 'was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent.'" 314 Kan. at 457. In this case, we are clearly convinced that we erred in *Longobardi* and subsequent caselaw applying that holding. Based on our analysis above, we correct our previous error and hold the Fifth Amendment extends the privilege against self-incrimination to a convicted defendant or witness who can establish a legitimate risk of incrimination, even if the basis for the conviction is a plea and no motion to withdraw plea is made before sentence is imposed.

C. *Availability of the privilege against self-incrimination after sentencing*

Yet our adherence to *Mitchell* does not definitively resolve the primary issue at hand, which is whether the privilege is available after sentencing and, if so, under what circumstances. The United States Supreme Court has yet to address this issue, so the outer limit of the privilege remains an open question.

1. *Privilege against self-incrimination available during direct appeal*

The weight of federal and state authority to consider whether the privilege extends past sentencing holds the privilege is available while a defendant challenges their conviction on direct appeal or until the time for such appeal has expired. McCormick is instructive on what appears to be the mainstream position:

"If direct appeal from a conviction is pending or remains available, defendants might harbor hope that their convictions will be reversed on appeal but fear that any disclosures they make could be used against them on retrial. Because of this possibility, the courts

26

have generally held that a convicted defendant retains the protection of the privilege until either the appeal is exhausted or the time for appeal expires. The possibility of reversal and retrial is not so remote as to constitute a negligible risk under the prevailing standard." McCormick on Evid. § 121 (8th ed.).

Courts applying this majority rule use a risk-of-incrimination standard to determine whether an individual retains the privilege past sentencing. See, e.g., *United States v. Kennedy*, 372 F.3d 686, 691-92 (4th Cir. 2004) (a defendant convicted of drug trafficking retained privilege while appealing his conviction when called as a witness to testify before a grand jury about the facts supporting his conviction) ("Because any post-conviction evidence could be used against a defendant if his conviction were to be overturned, the risk of coerced self-incrimination remains until the conviction has been affirmed on appeal."); *United States v. Duchi*, 944 F.2d 391, 394 (8th Cir. 1991) (noting split in authority on the issue of availability of the privilege postconviction but favoring majority rule that extends it "until the time for appeal has expired or until the conviction has been affirmed on appeal"); *Ottomano v. United States*, 468 F.2d 269, 273-74 (1st Cir. 1972) (holding witness could claim privilege postsentencing while motion to vacate sentence was still pending) ("Had this motion been granted, Ottomano could conceivably have been retried . . ." and in this event, his testimony "would have been admissible against him."); *Holsen v. United States*, 392 F.2d 292, 293 (5th Cir. 1968) (holding witness who was appealing his conviction retained the privilege during the appeal process and could not have been compelled to testify at codefendant's trial); *Mills v. United States*, 281 F.2d 736, 741 (4th Cir. 1960) (holding witness may claim privilege as long as time for an appeal has not expired); *Graham v. Durr*, 433 P.3d 1098, 1102-04 (Alaska 2018) (concluding "defendants appealing only their sentences—like defendants appealing their convictions—may invoke the privilege against self-incrimination until their convictions become final"); *State v. Gretzler*, 126 Ariz. 60, 88, 612 P.2d 1023 (1980) ("The Fifth Amendment privilege is available to a convicted person when his conviction

27

or sentence is being appealed."); *People v. Villa*, 671 P.2d 971, 973 (Colo. App. 1983) ("[W]hen a defendant is appealing his conviction, or seeking other post-conviction relief, the privilege continues in order to protect him from the subsequent use of self-incriminating statements in the event relief is granted."); *State v. Johnson*, 77 Idaho 1, 8-9, 287 P.2d 425 (1955) (witness retained privilege not to testify at alleged accomplice's trial while his appeal was pending); *Ellison v. State*, 310 Md. 244, 258-59, 528 A.2d 1271 (1987) (holding witness who had been convicted and sentenced could invoke the privilege during the time to seek appellate review or while appealing the conviction or sentence); *People v. Lindsay*, 69 Mich. App. 720, 722-23, 245 N.W.2d 343 (1976) (witness who was appealing his guilty plea could assert the privilege during the pendency of his appeal); *Johnson v. Fabian*, 735 N.W.2d 295, 310 (Minn. 2007) (holding "a convicted individual can claim the privilege against self-incrimination as long as a direct appeal of that conviction is pending, or as long as the time for direct appeal of that conviction has not expired"); *Myers v. State*, 154 P.3d 714, 714-15 (Okla. Crim. App. 2007) ("[T]he weight of authority permits a witness whose conviction has not been finalized on direct appeal to invoke the privilege against self-incrimination and to refuse to give any testimony whatever in regard to the subject matter which formed the basis of [the] conviction."); *State v. Ducharme*, 601 A.2d 937, 944-45 (R.I. 1991) (witness retained a privilege not to testify at an alleged accomplice's trial because he still had time to file a motion for a new trial or appeal his conviction).

At least two state appellate courts have found a witness may similarly invoke the privilege while appealing a denial of a postsentence motion to withdraw a guilty plea or until the deadline for such an appeal has expired. See, e.g., *State v. Marks*, 194 Wis. 2d 79, 92-96, 533 N.W.2d 730 (1995) (a real and appreciable fear of incrimination may exist for a witness who intends and still has the right to withdraw a guilty plea, who intends to appeal within the deadline or has an appeal pending, or a witness who intends to request a reduction in sentence); *State v. Harris*, 92 Wis. 2d 836, 846-49, 285 N.W.2d 917 (Ct.

App. 1979) (witness who still had time to file an appeal or a postsentence motion to withdraw a guilty plea retained the Fifth Amendment privilege against self-incrimination).

We find these decisions persuasive. Thus, in applying the risk-of-incrimination standard, we hold the Fifth Amendment privilege remains available to a defendant or witness who has filed a direct appeal in a criminal case and a decision on appeal is not final (or whose right to file a direct appeal has not expired) when the testimony sought exposes the witness to a legitimate risk of incrimination.

2. *Privilege against self-incrimination available during direct appeal of motion to withdraw guilty plea*

Having determined the privilege is available until a decision on direct appeal becomes final, we now must determine whether the risk of compelled self-incrimination also justifies availability of the privilege until a final decision on direct appeal *of a motion to withdraw guilty plea*. To resolve this issue, we begin with the statutes governing criminal appeals.

Under K.S.A. 22-3602(a), defendants generally have the right to appeal from any district court judgment to an appellate court having jurisdiction of the appeal. But the statute provides an exception to this general rule when a defendant has pleaded guilty or no contest. In those cases, a defendant has no right to file a direct appeal from a judgment of conviction because this is one of the rights surrendered by the plea. See K.S.A. 22-3602(a) ("No appeal shall be taken by the defendant from a judgment of conviction before a district judge upon a plea of guilty or nolo contendere[.]"). See also *State v. Hall*, 292 Kan. 862, 866-68, 257 P.3d 263 (2011) ("A defendant cannot take a direct appeal from a conviction flowing from a guilty plea. The right to take such a direct appeal is one of the rights surrendered" when the plea is entered by agreement or in open court.). A

guilty plea without a subsequent motion to withdraw deprives the appellate court of jurisdiction over the conviction. 292 Kan. at 867 (explaining the district court is better equipped to address these types of issues); but see 292 Kan. at 868 ("A guilty plea *does not* surrender a defendant's right to [directly] appeal *a sentence*.") (Emphasis added.) (citing *State v. Patton*, 287 Kan. 200, 226, 195 P.3d 753 [2008]).

Rather, to challenge a conviction after a guilty plea, the defendant must first move to withdraw the plea in the district court pursuant to K.S.A. 22-3210. After sentencing, a judgment of conviction by guilty plea may be set aside to correct manifest injustice. K.S.A. 22-3210(d)(2); K.S.A. 22-3210(e) (A postsentence motion to withdraw plea must be brought within one year of a final appellate order on a direct appeal, termination of appellate jurisdiction, or denial or grant of a petition for writ of certiorari to the United States Supreme Court.). See also *White v. State*, 203 Kan. 687, 693, 455 P.2d 562 (1969) ("[O]nce a plea of guilty has been entered and sentence pronounced whether or not the plea can later be withdrawn is a matter within the sound discretion of the trial court, whose judgment will not be disturbed unless there has been an abuse of that discretion.").

Once a defendant has filed a postsentence motion to withdraw a guilty plea and it is denied, the defendant may *then* appeal the denial within the direct appeal time period. See K.S.A. 22-3608(c) (time for appeal from judgment of district court). This court has held the statutory bar on a direct appeal from a judgment of conviction by guilty plea under K.S.A. 22-3602(a) does not preclude a direct appeal from the district court's denial of the motion to withdraw since K.S.A. 22-3210(d)(2) provides a means of withdrawing the plea postsentence. See *State v. McDaniel*, 255 Kan. 756, 758-59, 877 P.2d 961 (1994) ("Implicit in the legislature's enactment of K.S.A. 22-3210[d], permitting withdrawal of a plea of guilty or nolo contendere . . . is the right to a direct appeal from the trial court's denial of a motion to withdraw plea.").

In light of a criminal defendant's implicit right to directly appeal a district court's denial of a motion to withdraw plea under K.S.A. 22-3210(d)(2), we find this type of appeal indistinguishable from a direct appeal of a conviction by verdict under K.S.A. 22-3602(a) *as it relates to the risk-of-incrimination and applicability of the privilege*. To conclude otherwise would undermine the statutory right of a defendant to withdraw a guilty plea in the interest of manifest justice at the district court's discretion. Thus, we hold the Fifth Amendment privilege against self-incrimination similarly remains available to a defendant or witness who pled guilty but has filed a postsentence motion to withdraw plea pursuant to K.S.A. 22-3210(d)(2) and (e) and a decision on the motion or a decision on the timely appeal of denial of the motion is not final, when the testimony sought exposes the witness to a legitimate risk of incrimination.

## 3. *Finality of appeal*

As explained above, the risk of coercive incrimination justifies extending the privilege after sentencing while a direct appeal is pending. But this justification fades away when the direct appeal becomes final. Because finality is an issue here, we provide a brief overview on the subject.

In *State v. Heath*, 222 Kan. 50, 54, 563 P.2d 418 (1977), this court stated that "[a] conviction is generally not considered 'final' until (1) the judgment of conviction has been rendered, (2) the availability of an appeal has been exhausted, and (3) the time for any rehearing or final review has passed." The phrase "time for any rehearing or final review has passed" necessarily means that the period during which a rehearing could be requested or a final decision could be reviewed has elapsed without any such action being taken. Relevant here, a motion for rehearing or modification can be filed within 21 days after an appellate decision is filed. Rule 7.06(a).

31

This brings us to the effect of a Kansas appellate court's mandate on the finality of a conviction, which is governed by Kansas Supreme Court Rule 7.03 (2024 Kan. S. Ct. R. at 45) and K.S.A. 60-2106. After an appellate court's decision is announced by the filing of an opinion, a certified copy of that opinion is mailed to the district court along with a "mandate" to enforce the decision. K.S.A. 60-2106(c); Supreme Court Rule 7.03(a), (b). The mandate issues 7 days after: "(i) *the time to file a petition for review or motion for rehearing or modification expires*; (ii) entry of an order denying a timely petition for review or motion for rehearing or modification; or (iii) any other event that finally disposes of the case on appeal." (Emphasis added.) Rule 7.03(b)(1)(A) (2024 Kan. S. Ct. R. at 45-46).

The mandate is effective when issued and becomes part of the final judgment. Rule 7.03(b)(1)(C); K.S.A. 60-2106(c) ("Such mandate and opinion, without further order of the judge, shall thereupon be a part of the judgment of the court if it is determinative of the action, or shall be controlling in the conduct of any further proceedings necessary in the district court."). Of course, the district court cannot enforce the judgment until the mandate has issued. Therefore, a judgment on appeal is not considered final until the mandate has issued.

V. *Applying Kansas rule on availability of the privilege to Hutto's facts*

Whether the privilege was available to Hutto when he was called to testify at Showalter's trial depends on whether Hutto faced a legitimate risk of incrimination. Hutto claims he faced such a risk because he still had the opportunity to file (1) a motion for rehearing or modification of this court's decision to affirm the denial of his motion to withdraw plea pursuant to Supreme Court Rule 7.06; and (2) a motion for writ of habeas corpus under K.S.A. 60-1507 alleging ineffective assistance of counsel for giving inaccurate advice to Hutto regarding the guilty plea. A review of the factual and

32

procedural history of this case is necessary to determine whether Hutto's claim is legitimate.

Hutto pled guilty to two counts of felony murder and avoided going to trial. As we now recognize, a guilty plea does not waive the Fifth Amendment privilege beyond the point of conviction. See *Mitchell*, 526 U.S. at 321. Rather, a defendant convicted by plea—like a defendant convicted by verdict—retains the privilege until the risk of incrimination terminates.

The district court sentenced Hutto on May 10, 2019. Since Hutto pled guilty and did not withdraw his pleas before sentencing, he could not directly appeal his conviction, having waived that right. See *Hall*, 292 Kan. at 866-68 (A guilty plea waives the right to directly appeal the conviction.). Under these circumstances, the only way Hutto could directly appeal from his conviction was to first file a motion to withdraw his guilty pleas.

On May 22, 2019, Hutto filed a pro se motion with the district court seeking posttrial relief, including an ineffective assistance of counsel allegation that he claimed justified withdrawing his guilty pleas. *Hutto*, 313 Kan. at 744. The district court construed that motion to be a postsentence motion to withdraw plea, which can be granted to correct a manifest injustice under K.S.A. 22-3210(d)(2) within the deadlines set forth in K.S.A. 22-3210(e)(1). Hutto filed his motion to withdraw plea 12 days after the district court entered his sentence, well within the required deadline under K.S.A. 22-3210(e)(1)(A) requiring that the motion be filed within 1 year of termination of appellate jurisdiction. See *State v. Smith*, 315 Kan. 124, 127, 505 P.3d 350 (2022) ("When there is no appeal, appellate jurisdiction terminates 14 days after sentencing.") (citing K.S.A. 2020 Supp. 22-3608[c]).

33

After holding an evidentiary hearing on the motion and considering briefs filed by the parties, the district court denied Hutto's request to withdraw his pleas on February 11, 2020. Less than a week later, on February 17, 2020, Hutto filed a direct appeal of the district court's denial of his motion to withdraw his pleas. See K.S.A. 22-3608(c) ("[D]efendant shall have 14 days after the judgment of the district court to appeal."). As discussed, a defendant who pled guilty but files a motion to withdraw the plea pursuant to K.S.A. 22-3210(d)(2) and (e) in the district court can directly appeal the denial of that motion. *McDaniel*, 255 Kan. at 758-59. For purposes of determining availability of the privilege against self-incrimination, we hold this type of appeal is no different than a direct appeal of a conviction by verdict.

We affirmed the district court in an opinion filed on July 9, 2021. *Hutto*, 313 Kan. at 751. In the interim period between this court filing its decision and expiration of the deadline in which Hutto could file a motion to reconsider or modify the decision, the State subpoenaed Hutto to testify at Showalter's trial. Hutto affirmatively invoked his Fifth Amendment privilege. The transcript reflects the most relevant exchange:

"Q. Good afternoon. Can you please tell us your name?
"A. Matthew Hutto.
"Q. Mr. Hutto, are you currently an inmate in the Kansas Department of Corrections?
"A. Yep.
"Q. And why are you an inmate?
"A. I was convicted, or pled guilty. I don't . . .
"Q. What crimes were you convicted of?
"A. Felony murder.
"Q. Was it one or two counts?
"A. Two counts.
"Q. And who were you convicted of murdering?
"A. Is that relevant?
"Q. Yes.

34

"A. Lisa Sportsman and [J.P.].

"Q. What did you do to cause them to die, and be convicted of felony murder?

"A. I don't see how this is relevant.

"Q. Okay. Well, it is, so answer my question.

"A. And it's my turn. I told you guys that I'm not testifying. I plead the Fifth."

Based on his answers, Hutto apparently believed he faced no risk of incrimination by naming the victims of the felony-murder conviction but believed he *did face* a risk of incrimination if he had to explain what he did to the victims to cause them to die. Was Hutto's assessment of the risk legitimate—real and appreciable? We conclude it was. As Hutto argues, the July 30, 2021, deadline for filing a motion for rehearing or modification of this court's July 9, 2021, decision had not expired when he refused to testify on July 13, 2021, and again on July 16, 2021. See Rule 7.06(a), (b) ("A motion for rehearing or modification in a case decided by the Supreme Court may be served and filed no later than 21 days after the decision is filed . . . A motion for rehearing or modification stays the issuance of the mandate pending determination of the issues raised by the motion."). Thus, the direct appeal of the court's denial of his motion to withdraw guilty plea was not final. And as Hutto further argues, compelling him to explain in detail what he did to the victims to cause them to die—an explanation that goes far beyond a guilty plea limited to a factual basis establishing the elements of the crime—created a legitimate risk of compelled incrimination if his request for relief was granted. For these reasons, we conclude Hutto could assert the Fifth Amendment privilege to prevent answering this specific question.

We pause to note the panel correctly held the State did not remove Hutto's privilege by granting him "use immunity." *Showalter*, 62 Kan. App. 2d at 676-77. As the panel concluded, only a grant of use and derivative use immunity extinguishes the privilege against self-incrimination to permit compelled, self-incriminatory testimony. See *Delacruz*, 307 Kan. at 534-535 ("[I]f the government wants to compel testimony

35

from a witness claiming the Fifth Amendment privilege against compulsory self-incrimination, it must grant the witness at least use and derivative use immunity, otherwise a citation in contempt must be reversed."). Thus, the State's grant of use immunity was insufficient to terminate Hutto's privilege against self-incrimination.

As such, Hutto properly invoked the Fifth Amendment privilege, and the district court could not punish him for his refusal to testify. We therefore reverse the district court's order finding Hutto in contempt and vacate the six-month jail sanction.

Our decision finding Hutto faced a legitimate risk of incrimination when he refused to testify is based on his pending direct appeal of the district court's denial of his postsentence motion to withdraw plea. Although we affirmed the district court's denial of Hutto's motion, the direct appeal was not final at the time he was called to testify at Showalter's trial because the deadline to file a motion to reconsider or modify the decision had not yet expired, thus the mandate for our decision had not even begun to run, let alone issue.

We acknowledge Hutto's argument that he also faced a legitimate risk of incrimination because he might file a motion for writ of habeas corpus under K.S.A. 60-1507 alleging ineffective assistance of counsel for giving him inaccurate advice regarding his guilty plea. But as we held above, a risk of incrimination analysis must be conducted case-by-case to consider whether the risks of incrimination specifically identified by the person invoking the privilege are real and appreciable. The witness' fear of self-incrimination must be reasonable and the threat discernible for the privilege to apply. A hypothetical or speculative danger of self-incrimination is not enough to invoke the privilege.

Unlike Hutto's pending appeal of the district court's denial of his motion to withdraw plea, there is no evidence in the record to show Hutto had filed a K.S.A. 60-1507 motion related to his felony murder convictions, or that he intended to do so at the time he was called to testify in Showalter's trial. Thus, as it relates to a potential K.S.A. 60-1507 motion, Hutto has failed to establish a real and appreciable risk of incrimination to invoke the privilege.

The judgment of the Court of Appeals affirming the district court is reversed. The district court's order of contempt is reversed, and the sanction of six months in jail is vacated.